In re Ruben E. INNIS, III, a/k/a "Chris" Innis, Debtor.

**ST. JOHN MEDICAL CENTER, INC., an Oklahoma charitable corporation, Plaintiff,**

v.

**Ruben E. INNIS, III, a/k/a "Chris" Innis, Defendant.**

**Bankruptcy No. 94–02791–W.**
**Adv. No. 94–0388–W.**

United States Bankruptcy Court, N.D. Oklahoma.

May 16, 1995.

---

8. *Quinlan v. Koch Oil Co.,* 25 F.3d 936, 940–41 (10th Cir.1994).

David A. Tracy, Tulsa, OK, for plaintiff.

Robert DuPriest, Sapulpa, OK, for defendant.

## MEMORANDUM OPINION AND ORDER

MICKEY DAN WILSON, Chief Judge.

This adversary proceeding was submitted for decision on stipulations and briefs. Upon

consideration thereof, and of the record herein, this Court, pursuant to F.R.B.P. 7052, finds, concludes and orders as follows. Procedural history of the matter is included in "Findings of Fact."

### FINDINGS OF FACT

On June 27, 1993, Ruben E. Innis, III ("Innis") was injured in an automobile accident. Innis was treated at St. John Medical Center between June 27 and September 3, 1993. St. John Medical Center is operated by St. John Medical Center, Inc.; and the two are referred to jointly hereinafter as "St. John." See stips. ¶ 5 and ex. A.

On January 11, 1993, St. John by its authorized representative executed a document titled "Notice of Hospital Lien" ("the notice"). The notice stated that Innis owed St. John "total hospital charges ... in the amount of $223,345.31 ..." The notice was recorded in the Office of the County Clerk of Tulsa County on February 17, 1994, pursuant to 42 O.S. §§ 43–44. See stips. ¶ 6 and ex. A.

The vehicle that injured Innis was owned by one Jerry D. Wilson ("Wilson"). Innis, represented by personal injury attorney Tom Lane ("Lane"), made a claim against Wilson. Wilson was insured by Farmers' Insurance Group ("Farmers"). In settlement of Innis' claim against Wilson, Farmers paid a total of $40,000.00. Farmers paid the money in three checks or "insurance drafts," one issued on March 14, 1994 and the other two issued on July 6, 1994. See stips. ¶¶ 8, 9, ex. B.

Innis and/or Lane knew that St. John's lien claim was filed, and had not been released or satisfied, stips. ¶ 7. Lane also claimed an attorney's lien on the insurance proceeds. A representative of St. John agreed to allow Lane to satisfy his own lien claim from the proceeds, and for this purpose endorsed the insurance drafts to allow the proceeds to be deposited in Lane's trust account. St. John did not release its own lien, and understood that, after Lane had paid himself, St. John's lien claim on the remaining proceeds would be protected, stips. ¶¶ 8, 9.

After paying himself, Lane transferred the balance of $23,634.97 to the trust account of Innis' bankruptcy attorney Robert DuPriest ("DuPriest"). DuPriest also knew the particulars of St. John's lien claim. See stips. ¶¶ 8, 10.

On September 20, 1994, Innis, represented by DuPriest, filed his voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court. See stips. ¶¶ 3, 10, docket # 1.

With his petition, Innis filed his Schedule C, claiming his interest in personal injury proceeds as exempt. A meeting of creditors was set for October 24, 1994, was continued to November 14, 1994, and was concluded on that date. St. John received notice of the commencement of the bankruptcy case and of the first date set for the meeting of creditors. Pursuant to F.R.B.P. 4003(b), objections to Innis' claims of exemption were required to be filed within thirty (30) days after the conclusion of the meeting of creditors, i.e. on or about December 14, 1994. No objections to Innis' claims of exemption were filed, or have ever been filed.

On December 1, 1994, Innis received $10,725.63 from DuPriest's trust account. Innis used $660.00 to pay DuPriest's fees and court costs for this bankruptcy; spent about $6,000.00 more; and retains about $4,500.00 in a savings account at State Bank and Trust, Tulsa, Oklahoma. DuPriest still holds $12,249.34 in his trust account. See stips. ¶¶ 11, 12.

On December 23, 1994, St. John filed its complaint commencing this adversary proceeding. St. John seeks a determination "that it has a prior lien against the funds held by [Innis or his agent] as fiduciary, and that any defalcation, dissipation or disposal of any funds in derogation of St. John's statutory lien is non-dischargeable in bankruptcy" under 11 U.S.C. § 523(a)(4), complaint p. 3 ¶ 9. On January 23, 1995, Innis answered that the insurance proceeds are exempt.

At pre-trial conference on March 8, 1995, memorialized by order filed March 9, 1995, it was agreed that the matter should be submitted for decision on stipulated facts and briefs. The Court ordered all documents filed by April 18, 1995.

On March 17, 1995, the parties filed a "Pre–Trial Conference Order" containing

stipulated facts and a statement of issues. On April 6, 1995, St. John filed its brief; and on April 21, 1995, Innis filed his response thereto. Thereafter the Court took the matter under advisement.

### CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (I), (O), 11 U.S.C. § 522(b), (*l*), § 523(a)(4).

The Court notes that Innis' response was filed three days late. The Court waives this defect, and proceeds to the merits.

■ This adversary proceeding began as a request by St. John for an exception to discharge. But in the "Pre–Trial Conference Order," the parties state the issue as follows: "Is a statutory hospital lien enforceable as to personal injury settlement proceeds of less than $50,000.00 which are declared exempt in a Chapter 7 bankruptcy proceeding?" Considering the complaint, answer, pre-trial order, and briefs, this Court concludes that Innis has effectively confessed the complaint, save for one affirmative defense on which this Court is asked to rule—namely, whether Innis' exemption of the personal injury proceeds in some manner defeats St. John's lien.

St. John argues that "The law does not protect exempt property from the enforcement of valid liens," St. John's brief p. 6, citing *In re Pohrman*, 146 B.R. 570, 574 (B.C., D.Ore.1992). Innis argues that the effect of exemption is to take the property out from under the lien, leaving the lien in abstract existence but attached to nothing, see Innis' response unnumbered pp. 2–3.

11 U.S.C. § 522(c)(2)(A) provides that exempt property remains liable for a debt secured by a lien that is not avoided by various affirmative measures under Federal bankruptcy law. Innis has not avoided St. John's lien by any of these measures. Nor does it appear that Innis could have avoided St. John's lien, under e.g. 11 U.S.C. § 101(53), § 545. Therefore, as far as Federal law is concerned, Innis' personal injury settlement proceeds, even though exempt, remain liable for St. John's debt to the extent it is secured by St. John's hospital lien.

Although exemption in bankruptcy occurs under Federal law, the Federal bankruptcy law measures what is exempt by State exemption standards, 11 U.S.C. § 522(b), 31 O.S. § 1(B).

■ Oklahoma law does not protect exempt property from *some* liens. In this regard, Oklahoma law is not unusual. Exemption does protect property from execution, including execution's mechanism, the judgment lien. But it is "entirely elementary" that exemption has no effect on consensual liens, i.e. mortgages and security interests, *Keist v. Cross*, 118 Okl. 142, 143, 247 P. 85 (Okl.1926). It is also clear that exemption has no effect on certain statutory liens, e.g. mechanics' liens under 42 O.S. § 141 et seq. Such liens tend to be assigned by statute specifically to property which is likely to be exempt, as e.g. mechanics' liens tend to attach to homes which are exempt under 31 O.S. § 1(A)(1), § 2, *Conrad v. Marlar*, 366 P.2d 463 (Okl.1961). If exemption were given effect against such a lien, the lien itself would be rendered useless and nugatory. If the lien is sustained, the exemption is not rendered nugatory, because the exemption continues to be effective against execution by all creditors *except* the special beneficiary of the statutory lien.

■ The hospital lien involved here is a statutory lien, assigned by 42 O.S. § 43 to property which is exempt under 31 O.S. § 1(A)(21). If the exemption were given effect against the lien, the lien would be rendered nugatory. This Court declines to construe the Oklahoma statutes in such manner as to render 42 O.S. § 43 nugatory.

The Court concludes that, under both Federal and Oklahoma law, a hospital lien under 42 O.S. § 43 et seq. is enforceable against personal injury proceeds under $50,000.00, notwithstanding exemption of such proceeds under 11 U.S.C. § 522(b), (*l*), 31 O.S. § 1(A)(21).

■ The Court further concludes that, in the posture of this adversary proceeding, St. John is entitled to an exception from discharge under 11 U.S.C. § 523(a)(4) as to any portions of such proceeds which have been "defalcated, dissipated or disposed of by [In-

nis] for his personal benefit, in derogation of St. John's statutory lien rights," including in particular those proceeds which have been distributed to Innis from DuPriest's trust account. Such exception to discharge might have been better grounded on 11 U.S.C. § 523(a)(6); but since Innis made no contest as to which subdivision of § 523(a) was best applicable, and since there is some merit to St. John's invocation of § 523(a)(4), see *In re Turner*, 134 B.R. 646 (B.C., N.D.Okl.1991), St. John is entitled to the relief it requested.

Judgment shall be entered accordingly. St. John shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.