### In re Brian Mitchell WOODWARD, Debtor.

### Bankruptcy No. 97–05149–M.

United States Bankruptcy Court, N.D. Oklahoma.

Jan. 27, 1999.

Patrick J. Malloy, III, Tulsa, OK, for Trustee.

Paul R. Tom, Tulsa, OK, for Harlton.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Trustee's Motion for Order Directing Disgorgement of Attorney Fees Paid to Debtor's Former Counsel (the "Motion") filed by Patrick J. Malloy III ("Trustee" or "Malloy") on November 4, 1998, and Attorney Harlton's Response to the Motion (the "Response") filed by Bruce Harlton ("Harlton"), on December 15, 1998. An evidentiary hearing (the "Hearing") was held in the matter on January 15, 1999. Malloy appeared *pro se*. Harlton appeared personally and through his attorney, Paul R. Tom. Debtor Brian Mitchell Woodward ("Debtor" or "Woodward") appeared personally and through his attorney, Sidney K. Swinson. The Court received evidence and heard argument from the parties. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

Some time prior to the fall of 1997, Woodward was injured in a traffic accident, the details of which are not a part of the record. After the accident, Woodward retained Jonathan Sutton, a personal injury lawyer in Tulsa ("Sutton"), to represent him in a civil action filed in the District Court of Tulsa

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 1999).

County, Oklahoma (the "State Court Action") against the driver of the other vehicle involved in the accident, Beatrice Stackhouse ("Stackhouse"). Sutton agreed to represent Woodward on a contingency fee basis, the fee being fifty per cent (50%) of any amounts recovered. Sometime in or about October of 1997, Woodward received an offer to settle the State Court Action in exchange for a cash payment of $100,000.00, which represented the policy limits of liability coverage of the insurance held by Stackhouse.

At the time the offer of settlement was made, Woodward had incurred significant unpaid medical debts. Two of the entities holding those debts filed liens (the "medical liens") in the office of the Clerk of Tulsa County, Oklahoma. According to the testimony of Kenneth Todd ("Todd"), the only witness who testified at the evidentiary hearing in this matter, Sutton contacted Todd and informed Todd of the proposed settlement. Todd was an attorney in Tulsa at the time with considerable experience representing debtors in bankruptcy cases. Sutton inquired of Todd whether such medical liens would be valid and enforceable if Woodward were to file a bankruptcy case. Todd testified that Sutton was concerned with whether the medical liens would defeat either Woodward's claimed exemption or Sutton's right to collect his contingent fee from the settlement proceeds.

According to Todd, he and Sutton entered into an agreement whereby Sutton would pay the total sum of $2,500.00 in exchange for

research on the issue of whether the medical liens could be avoided in a bankruptcy case and for the filing of a bankruptcy case, if Todd concluded that such avoidance was possible. The transaction was described by Todd as a "turn-key" transaction: Sutton was in effect paying one fee for both tasks. Todd spent approximately eight to ten hours reviewing the liens and conducting legal research as to their validity. Todd concluded that the medical liens could be avoided if Woodward were to file a Chapter 7 bankruptcy case.[2] Todd testified that the work he did with respect to the enforceability of the medical liens was "pivotal" to the decision as to whether Woodward would ultimately file bankruptcy; if the liens could not be avoided, no bankruptcy would be filed.

At the time he entered into this agreement with Sutton, Todd had made the decision to retire from the active practice of law.[3] Accordingly, when Todd determined that the hospital liens could be avoided in a bankruptcy case, another attorney was needed to act as bankruptcy counsel to Woodward. Todd and Harlton agreed that Harlton would be that attorney. The record is unclear as to whether Harlton had any involvement with Woodward prior to that time.

On October 31, 1997, Sutton paid $2,500.00 in the form of a check payable to Harlton.[4] According to Todd, the check was made payable to Harlton because Todd had no checking account available into which the check could be deposited.[5] Harlton subsequently

---

2. Todd's testimony that he performed the research and rendered the advice regarding the validity of the medical liens is not consistent with statements made by Harlton to this Court. At a hearing held on May 26, 1998, Harlton made the following statement:

> Mr. Woodward, when he came to *my* office, *I* made a due diligent effort to see what liens were done relative to, I think was St. John's, and there were no attachment liens other than the facial matter of the lien *that didn't reflect* all of the additional charges that they said they had. So *I* advised Mr. Woodward that upon making disclosure of Mr. Sutton's contingent contract and his $50,000 exemption, all of which was in the schedules, that the Court will look and see.

*Docket No. 36*, p. 5, line 23 through p. 6, line 6 (emphasis added). These statements led the Court to believe that Harlton, as counsel of rec-

ord for Woodward in the bankruptcy case, was doing his own research and rendering his own advice to his client.

3. The exact nature of Todd's "retirement" is somewhat puzzling, as it appears that Todd continues to work for Harlton in some capacity. As noted *infra*, the Court will require disclosure of the exact nature of the current relationship between Todd and Harlton.

4. According to Todd, he had completed his research and reached his legal conclusion before the fee agreement was struck.

5. The Court is rather skeptical of this explanation. It is hard to believe that Todd had no means of negotiating a payment by check other than through the use of Harlton's business account.

deposited the check into his business account. Todd testified that he and Harlton agreed that Harlton would be paid his "customary" fee of $750.00 for handling the bankruptcy case, and that an additional $175.00 of the $2,500.00 would be used to pay the bankruptcy court filing fee. The balance was paid to Todd as his fee for conducting the research relating to the medical liens. Todd received these payments in the form of cash, check, and payment by Harlton of certain bills owed by Todd to third parties. At the time of the transaction, Harlton and Todd were not law partners, nor was Todd an associate in Harlton's law firm. Todd testified that he performed legal work for Harlton on a "contract" basis, doing "piece work" as requested by Harlton.

Todd continued to be involved in the Woodward bankruptcy case after his legal research was completed. Although Todd described his work as that of a "typist," Todd met with and obtained information from Woodward, placed that information in the schedules and statement of affairs, prepared and printed those documents, and oversaw their signature by Woodward. Todd also testified that he made the determination that none of the compensation paid to him by Sutton needed to be disclosed in the bankruptcy case. Notwithstanding Todd's characterization, these tasks are far more than clerical in nature.

Woodward filed a Chapter 7 bankruptcy case on November 3, 1997, with Harlton as his attorney of record. The schedules, statement of affairs and disclosure of attorney compensation forms were filed the same day. None of the documents make any reference to Todd. In the disclosure of compensation form, Harlton stated that he had been paid the sum of $750.00 from a third party "for services rendered or to be rendered on behalf of the debtor in contemplation of or in connection with the bankruptcy case." Harlton also stated that he did not agree "to share the above-disclosed compensation with any other person unless they are members and associates of [his] law firm." Harlton certified these statements to be a "complete statement of any agreement or arrangement for payment to [him] for representation of the debtor in this bankruptcy proceeding." In Section 9 of the Statement of Affairs, Woodward stated that Harlton (*not* Todd) had been paid $1,325.00 "for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement" of the case. No mention is made of the involvement of Todd.

Although both the schedules and statement of affairs divulged the existence of the State Court Action, the fact that an offer was pending to settle the State Court Action for $100,000.00 was not disclosed. The only value ever ascribed to the State Court Action in these documents is $50,000.00.[6] Given the fact that both Todd and Harlton[7] were aware of the $100,000.00 settlement offer at the time the bankruptcy case was filed, the exclusive use of the $50,000.00 value in the schedules and statement of affairs is misleading. In addition, Woodward declared in his statement of intention that he would surrender the State Court Action to Sutton, apparently in order to satisfy Sutton's secured claim.

Stackhouse remains willing to settle the State Court Action for $100,000.00 if she can be sure that all issues regarding the medical liens are resolved, and that such payment

---

6. In Schedule B, the State Court Action is identified in sub-section (33), and "debtor's interest" in the same is valued at $50,000.00. In Schedule C, Woodward claims the State Court Action as exempt as a "claim for personal injury," and once again values "debtor's interest" at $50,000.00. In Schedule D, Woodward states the State Court Action is subject to a secured claim held by Sutton, and lists the "collateral market value" and the "total collateral value" of the State Court Action at $50,000.00. The use of the $50,000.00 figure is significant, since Oklahoma allows an exemption in the proceeds of personal injury law in the amount of $50,000.00. *See* Okla. Stat. tit. 31, § 1(A)(21) (West 1991 & Supp. 1999). In the statement of affairs, the State Court Action is identified; however, no value is placed upon it.

7. At a May 26, 1998, hearing before this Court, Harlton admitted that "[a]t the time this bankruptcy was instigated, I [Harlton] knew that Mr. Woodward had a potential settlement of $100,000." *Docket No. 36*, p. 14, lines 12 through 14.

will relieve her from further liability. *See Docket No. 45.* Malloy has claimed an interest in the State Court Action, and has filed an application to settle the State Court Action, which is scheduled for hearing before this Court on February 9, 1999. Under the terms of the proposed settlement, Woodward would receive $45,000.00, Sutton $40,000.00, and the balance would be paid to the estate. The settlement is dependent upon Malloy successfully avoiding the medical liens. An adversary proceeding seeking to avoid said liens is currently pending before this Court.

Harlton is no longer counsel for Woodward. On September 18, 1998, Harlton filed an application to withdraw as counsel for Woodward. Said application was granted by order dated October 2, 1998. *See Docket No. 57.* Mr. Swinson is now counsel of record for Woodward.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

*Disgorgement*

█ The disclosure requirements for attorneys representing debtors in bankruptcy cases are contained in the following section of the Bankruptcy Code:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connec-

tion with the case by such attorney, and the source of such compensation.

§ 329(a). The appropriate disclosure must be made within fifteen days after the case is filed, and must include details regarding the sharing of the fee with other attorneys, unless those attorneys are partners or associates of the attorney representing the debtor. *See* Fed. R. Bankr.P.2016(b) (West 1999).[8] The United States Court of Appeals for the Tenth Circuit has ruled that

[T]he disclosure requirements imposed by § 329 are "mandatory not permissive." *In re Bennett,* 133 B.R. 374, 378 (Bankr. N.D.Tex.1991). Accordingly, an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, *id.* at 379; *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986), and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney, *In re Saturley,* 131 B.R. 509, 522 (Bankr.D.Me. 1991); *In re Kendavis Indus. Int'l, Inc.,* 91 B.R. 742, 759 (Bankr.N.D.Tex.1988); *In the Matter of Chambers,* 76 B.R. 194, 195 (Bankr.M.D.Fla.1987); *In re Chapel Gate,* 64 B.R. at 574, 575.

*In re Investment Bankers, Inc.,* 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *accord, In re Crayton,* 192 B.R. 970, 981 (9th Cir. BAP 1996); *see also In re Remmen,* 222 B.R. 623 (Bankr.D.Neb.1998) (ordering disgorgement of $5,000.00 where payment of retainer was not disclosed). The fact that the failure to properly disclose may have been the result of negligence or inadvertence does not "vitiate the failure to disclose." *See In re Park–Helena Corp.,* 63 F.3d 877, 881 (9th Cir.1995), *cert. denied* 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996); *accord, In*

8. Bankruptcy Rule 2016(b) reads as follows: Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of

any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

*re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997).

■ Counsel for a debtor "has an affirmative duty to disclose *all* its connections with the debtor, including fees paid in the year preceding the bankruptcy filing." *See In re Saturley*, 131 B.R. 509, 516 (Bankr. D.Me.1991) (emphasis in original). "Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient. Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *Id.* at 517 (citations omitted). The information is to be placed in the form required under Bankruptcy Rule 2016(b); a court is not required to look in the statement of affairs or in other pleadings in the case to determine the relationship between debtor and his or her attorney. *See id.; see also In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir.1995) (ordering disgorgement where retainer was disclosed in statement of affairs, but not in Rule 2016 statement); *see also In re Smitty's Truck Stop, Inc.*, 210 B.R. at 849 (same).

■ Harlton argues that disclosure of all sums which he received in excess of $750.00 was not required because: (1) Todd, not Harlton, was the ultimate recipient of the funds; (2) the work performed by Todd was not sufficiently related to the bankruptcy filing to warrant disclosure; and (3) the work performed by Todd pertained to the attorney's lien held by Sutton, and constituted work performed for Sutton, and not for Woodward. The Court rejects each of these arguments. The entire $2,500.00 was paid to Harlton. The fact that Harlton may have ultimately paid some of the funds to Todd

does not change this fact. Even if the funds were ultimately paid to Todd, Todd was neither a partner nor an associate of Harlton; he was an independent attorney who performed work for Harlton on request, being paid on a job-by-job basis. It is clear that under § 329(a), such sharing of compensation with another attorney *must* be disclosed.[9] Harlton failed to do so.

■■ The argument that the work performed with respect to the avoidability of the medical liens was not "in contemplation of or in connection with" the bankruptcy case is equally untenable. Todd testified that the determination that the medical liens could be avoided was "pivotal" to the decision to file this bankruptcy case. The main if not sole purpose of this bankruptcy case was to create a conduit for the safe passage of the proceeds of settlement of the State Court Action to Sutton and Woodward. Both Todd in his testimony and counsel for Harlton in his argument to the Court stated that the legal research and the bankruptcy filing were equal parts of a "turn-key" transaction. Services are performed in "contemplation of bankruptcy" where the debtor, as he or she obtains those services, "is influenced by the possibility or imminence" of a bankruptcy filing. *See, In re GIC Government Securities, Inc.*, 92 B.R. 525, 531 (Bankr.M.D.Fla. 1988) (citation omitted). There can be no conclusion other than that the work performed by Todd was both "in contemplation of" and "in connection with" this bankruptcy case.

■ This Court takes the requirement of full disclosure under § 329 seriously, for to do less is to judicially repeal the statute. "Section 329 is a disclosure provision designed to prevent bankruptcy attorneys from

---

9. The credibility of both Harlton and Todd on this point is weakened by the statements contained in Section 9 of the statement of affairs submitted on behalf of Woodward in this case. In that section, Woodward states that *Harlton* was paid $1,325.00 in the year prior to the filing of the bankruptcy case "for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case." Section 9 requires disclosure of payments to *all* attorneys consulted by the debtor, not just the attorney of record in the bankruptcy case. The schedules and statement of affairs were prepared by Todd, and presumably reviewed by Harlton prior to their submission to the Court. This statement constitutes an affirmative representation to the Court that Harlton, and not Todd, performed services for the Debtor and was paid for the same prior to the filing of the bankruptcy case. The argument that the payment actually was made to Todd through Harlton because Todd had no bank account is inconsistent with the representations made in Woodward's statement of affairs.

extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings." *In re Investment Bankers, Inc.,* 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994). Were the Court to require less than full disclosure, the purpose behind § 329(a) would be defeated. Counsel could avoid disclosure of any or all of the fees paid to them by making a covert decision that the undisclosed fee was so unrelated to the bankruptcy case that its disclosure was not required, and eliminating the possibility of Court review in the process. The Court's ability to make a meaningful review of attorney's fees would be hindered if not destroyed. Such a result can be neither condoned nor allowed.

The Court rejects the argument that the work performed by Todd was performed for the benefit of Sutton and not Woodward for several reasons. First of all, under Oklahoma law, it is clear that medical liens such as those at issue are "inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient." *See* Okla. Stat. tit. 42, §§ 43 and 46A (West 1991 & Supp.1999). The existence of the medical liens was not a threat to Sutton's ability to be paid. The medical liens, if valid, would defeat the exemption claimed by Woodward; as a result, it was Woodward, and not Sutton, who stood to gain from the research performed by Todd. *See In re Innis,* 181 B.R. 548, 551 (Bankr.N.D.Okla.1995) (holding properly perfected hospital lien superior to claimed exemption in personal injury settlement proceeds). Sutton has been represented to this Court to be an experienced personal injury lawyer [10]; this Court

finds it difficult if not impossible to believe that a competent personal injury lawyer is not well versed in the relative priority of medical liens and attorneys' liens, especially when those priorities are plain on the face of the operative statute. Finally, the fact that Todd and Harlton chose to disclose the fees paid for this research in the statement of affairs submitted on Woodward's behalf unmasks their own belief that the services at issue were performed for Woodward.

 Harlton also argues that he performed valuable services for Woodward, and that disgorgement of the fees received would be inequitable. The Court disagrees for two reasons. The law is clear that the failure to properly disclose compensation received is in and of itself grounds for disgorgement. *See In re Investment Bankers, Inc.,* 4 F.3d at 1565. The fact that the fee may or may not have been reasonable or have been earned does not justify a disregard for the rules of disclosure. In addition, a fee of $2,500.00 for representation of a debtor in a chapter 7 bankruptcy case, absent special circumstances, is excessive. Harlton has acknowledged that his "customary" fee for representing debtors in chapter 7 cases is $750.00. The total fees paid in this case are more than triple that amount. The Court has before it no evidence to indicate that the circumstances of this case justify such a fee.[11]

*Additional Sanctions*

 In the Motion, Malloy not only asks that the $2,500.00 received by Harlton be disgorged, but also asks the Court to award sanctions and "whatever other relief is deemed appropriate by this Court." *See Docket No. 69.* An order of disgorgement in

---

10. On April 15, 1998, Malloy filed a motion seeking to retroactively employ Sutton to represent the estate in the State Court Action. In that motion, Malloy represented that "Sutton is competent and qualified to handle personal injury matters ..." *See Docket No. 16,* ¶ 6. Given the fact that Sutton apparently negotiated a settlement with Stackhouse for the maximum which could reasonably be recovered (i.e., the policy limits of the insurance held by Stackhouse), the Court sees no basis to doubt Malloy's representation.

11. At the evidentiary hearing on this matter, Todd testified that he spent "eight to ten hours" obtaining and reviewing the medical liens, and researching issues surrounding their validity. No additional time detail was provided. The alleged defect in the medical liens is that they failed to attach "an itemized statement of the amount claimed." This requirement is found in the plain language of the statute. *See* Okla. Stat. tit 42, §§ 44 and 46C(1) (West 1991 & Supp. 1999). The Court is left to ponder why it took Todd eight to ten hours to review these statutes and two medical liens in order to arrive at the conclusion that the liens may not be perfected.

and of itself is a severe sanction. The Court does not impose an order of disgorgement lightly. Were the failure to disclose the payment of fees the only issue raised by the facts before the Court, disgorgement would in all likelihood serve as a sufficient deterrent. Unfortunately, such is not the case.

■ A bankruptcy court has "both the express and inherent authority to regulate the attorneys who practice before it." *See In re Crayton,* 192 B.R. 970, 976 (9th Cir. BAP 1996) (footnote omitted) (citations omitted). Included in that is the ability to suspend an attorney from practice before that court. *Id.; see also In re Moix–McNutt,* 220 B.R. 631, 638 (Bankr.E.D.Ark.1998); *see also* § 105(a). In order to suspend an attorney, a court must find by clear and convincing evidence that an attorney has acted before that court in such a fashion as to justify suspension. *See In re Placid Oil Co.,* 158 B.R. 404, 413 (N.D.Tex.1993). In addition, a court must provide the attorney with notice of the conduct at issue and an opportunity to respond to its concerns. *See In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 379 (3rd Cir.1997) (citations omitted); *see also In re Crayton,* 192 B.R. at 978–979 (citing *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)).

■ Harlton and Todd have both stated to this Court that the purpose of this bankruptcy case was to prevent the enforcement of the medical liens against the settlement proceeds from the State Court Action, thereby preserving those monies for the benefit of Woodward and Sutton. At the time this case was filed, Harlton and Todd both knew that an offer had been made to settle the State Court Action for $100,000.00. In spite of this knowledge, a value of $100,000.00 for the State Court Action was *never* disclosed in the schedules or statement of affairs. Instead, in an apparent attempt to be coy, Harlton and Todd use phrases such as "debtor's interest" in valuing the State Court Action at $50,000.00. The only estimation of the "total collateral value" of the State Court Action is found in the description of Sutton's claim in Schedule D. That estimation is $50,000.00, not $100,000.00. It is patently incorrect. It would be logical to infer that the State Court Action was valued at $50,000.00 in order to dissuade Malloy from taking an interest in the State Court Action for the benefit of the estate. Such conduct, if present, would justify a severe sanction against Harlton and could rise to the level of a violation of federal criminal law. *See* 18 U.S.C. § 152(1) (West 1999).

■ The Court is extremely concerned with the conduct exhibited by Harlton and Todd in this matter. Before considering what additional sanctions, if any, are warranted, the Court will provide Harlton with an opportunity to respond to the concerns of the Court. At said hearing, the Court will expect Harlton to address the following issues:

(1) His failure to value the State Court Action at $100,000.00 in the bankruptcy schedules;

(2) His purpose in indicating that Woodward intended to abandon the State Court Action to Sutton;

(3) His professional relationship with Todd, both at the time this case was filed and as of the date of the hearing;

(4) His efforts to respond to any and all requests by Malloy for information regarding the State Court Action;

(5) The inconsistency between the testimony of Todd that Todd conducted the research relative to the medical liens and Harlton's statements to the Court that Harlton investigated such matters; and

(6) The inconsistency between the representation contained in the statement of affairs that Harlton was paid for certain legal work performed pre-petition and the testimony of Todd that Todd conducted said research.

So that there be no misunderstanding, the Court hereby informs Harlton that it will consider imposition of one or more of the following sanctions:

(1) Suspension of Harlton's right to practice before the United States Bankruptcy Court for the Northern District of Oklahoma;

(2) Requiring Harlton to file a fee application in all cases in which Harlton appears as counsel for the debtor;

(3) Requiring Harlton to disclose the identity of any and all professionals, including paralegals, the services of which Harlton intends to utilize in any case before this Court; and

(4) Further monetary sanctions.

In addition, should Harlton fail to abide by the order of this Court regarding disgorgement, the Court will use its civil contempt power to immediately suspend Harlton from practice in this Court until he complies. *See In re Assaf,* 119 B.R. 465, 467–468 (E.D.Pa. 1990) (citations omitted) (discussing power of bankruptcy court to suspend attorney from practice for failure to comply with orders of the court).

### Conclusion

The Court concludes that disgorgement of the entire $2,500.00 fee is warranted in this case. The Court will order the fee to be paid to Malloy within ten (10) days of the date of the order accompanying this Memorandum Opinion. The Court is aware that Sutton is the individual who actually paid the fee in this case. Should he so desire, Sutton is granted leave to file a motion on the issue of whether these funds should ultimately be surrendered to him. Any such motion should be filed within ten (10) days of the date of the order accompanying this Memorandum Opinion.

The Court further concludes that an additional hearing is required on the issue of whether further sanctions should be imposed against Harlton. At said hearing, Harlton should be prepared to address the issues set forth above and is placed on notice of the potential sanctions which may be issued against him.

A separate order in accordance with this Memorandum Opinion is entered concurrently herewith.

### ORDER

THIS MATTER comes before the Court pursuant to the Trustee's Motion for Order Directing Disgorgement of Attorney Fees Paid to Debtor's Former Counsel filed by Patrick J. Malloy III on November 4, 1998, and Attorney Harlton's Response to the Motion filed by Bruce Harlton, on December 15, 1998. The issues having been duly considered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Trustee's Motion for Order Directing Disgorgement of Attorney Fees Paid to Debtor's Former Counsel be, and the same hereby is, sustained.

IT IS FURTHER ORDERED that Bruce Harlton shall disgorge the sum of $2,500.00 to Patrick J. Malloy III within ten (10) days of the date of this Order.

IT IS FURTHER ORDERED that if Bruce Harlton shall fail to comply with this Order and fail to disgorge the sum of the sum of $2,500.00 to Patrick J. Malloy III within ten (10) days of the date of this Order, the Court shall *sua sponte* enter an order suspending Bruce Harlton from the practice of law before this Court until such time as the order of disgorgement is complied with.

IT IS FURTHER ORDERED that a hearing shall be held on the **2nd day of March, 1999, at 9:00 o'clock a.m.,** in Courtroom 2, the Federal Building, 224 South Boulder Avenue, Tulsa, Oklahoma, on the issue of whether further sanctions should be imposed against Bruce Harlton.

IT IS FURTHER ORDERED that at said hearing, Harlton shall be prepared to address, through the submission of evidence and argument, the following issues:

(1) His failure to value the State Court Action at $100,000.00 in the bankruptcy schedules;

(2) His purpose in indicating that Woodward intended to abandon the State Court Action to Sutton;

(3) His professional relationship with Todd, both at the time this case was filed and as of the date of the hearing;

(4) His efforts to respond to any and all requests by Malloy for information regarding the State Court Action;

(5) The inconsistency between the testimony of Todd that Todd conducted the

research relative to the medical liens and Harlton's statements to the Court that Harlton investigated such matters; and

(6) The inconsistency between the representation contained in the statement of affairs that Harlton was paid for certain legal work performed pre-petition and the testimony of Todd that Todd conducted said research.

NOTICE IS HEREBY GIVEN that at the conclusion of said, hearing, the Court will consider the imposition of one or more of the following sanctions:

(1) Suspension of Harlton's right to practice before the United States Bankruptcy Court for the Northern District of Oklahoma;

(2) Requiring Harlton to file a fee application in all cases in which Harlton appears as counsel for the debtor;

(3) Requiring Harlton to disclose the identity of any and all professionals, including paralegals, the services of which Harlton intends to utilize in any case before this Court; and

(4) Further monetary sanctions.