**In re Mozelle Sylvia LEWIS, Debtor.**

**No. 04–10138–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

May 12, 2004.

---

and the greater expertise and knowledge that state courts hold with regard to family law matters.

**38.** *Id.*

Lonnie D. Eck, Tulsa, OK, for Plaintiff or Petitioner.

Timothy C. Janak, Tulsa, OK, for Defendant or Respondent.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

On March 2, 2004, Lonnie D. Eck ("Mr. Eck"), the Standing Chapter 13 Trustee in this District, filed his Motion For Review of Debtor's Transactions With Attorney and Request For Hearing (the "Motion") in this case. The Motion raises several troubling questions regarding the conduct of Timothy C. Janak ("Mr. Janak"), an attorney who practices regularly before this Court.[1] In the Motion, Mr. Eck asks the Court to order Mr. Janak "to make a complete review and file verified disclo-

---

1. According to the records of the Clerk of this Court, Mr. Janak has appeared as counsel for debtors in 64 cases since January 1, 2003. He operates his firm under the name "The

Timothy Group, PLC." For purposes of this Memorandum Opinion, all references to Mr. Janak shall apply equally to "The Timothy Group, PLC."

sures, under oath, concerning all transactions with the Debtor in this case and with Debtors in all other cases filed by Mr. Janak and/or his firm in the United States Bankruptcy Court for the Northern District of Oklahoma within the past year."[2] A hearing on the Motion was held on April 27, 2004. Following said hearing, the Court has undertaken a deliberate and thoughtful review of the facts and the applicable law. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C.A. § 1334(b).[3] Reference to the Court of this contested matter is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A).

### Findings of Fact

Dr. Mozelle Sylvia Lewis ("Dr. Lewis") is a retired educator and former school principal. She currently lives with her daughter and son-in-law, Sylvia Deniese Rycraw and Robert Lee Rycraw (the "Rycraws") and their two children in a residence owned by Dr. Lewis (the "Residence"). Previously, Dr. Lewis lived in a retirement community with her mother, and had allowed the Rycraws to live in the Residence. The Residence is subject to a first mortgage (the "Mortgage") held by an entity described as "Great Plains Mortgage."[4] As part of an arrangement with the Rycraws, Dr. Lewis believed that the Rycraws were making the payments due on the Mortgage. She was mistaken.

At some point in time prior to January 8, 2004, Dr. Lewis learned that the debt secured by the Mortgage was in arrears, and that the specter of foreclosure loomed over the Residence. On January 8, 2004, a meeting to discuss the financial problems faced by Dr. Lewis and the Rycraws was held at the offices of Great Plains Mortgage. Present at the meeting were Marcus Howard ("Mr. Howard"), an officer of Great Plains Mortgage, Dr. Lewis, the Rycraws, and Mr. Janak. At the meeting, Mr. Howard suggested that filing bankruptcy was a viable alternative for Dr. Lewis and the Rycraws. Mr. Howard then recommended Mr. Janak as an attorney with expertise in the area of bankruptcy, one whom Great Plains Mortgage had worked with on several prior occasions, and informed Dr. Lewis and the Rycraws that Mr. Janak was present at the request of Great Plains Mortgage.[5] Mr. Howard

---

**2.** *Motion,* ¶ 12.

**3.** Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2004). All other references to federal statutes and rules are also to West 2004 publications.

**4.** Here is where the confusion begins. Although in testimony Dr. Lewis identified the mortgage holder as "Great Plains Mortgage," the schedules filed on behalf of Dr. Lewis list the mortgage holder as "Homecomings Financial" with a Dallas, Texas, address. *See Trustee Ex. 2,* Schedule D. The Chapter 13

Plan lists "Homecomings" as the only creditor with a lien upon the Residence. *See Trustee Ex. 3.* However, on February 23, 2004, Bank One, National Association, filed an objection to the Plan proposed by Dr. Lewis, claiming that it was the holder of the Mortgage. *See Docket No. 21.* The Court, although unconvinced, will assume for purposes of this Memorandum Opinion that Great Plains Mortgage, Homecomings Financial, and Bank One, National Association are somehow one and the same entity.

**5.** No other details regarding the relationship between Mr. Janak, Mr. Howard, and Great Plains Mortgage were provided to the Court.

then introduced Mr. Janak and excused himself from the meeting.

Mr. Janak continued the meeting privately with Dr. Lewis and the Rycraws. It was determined that, in order to save the Residence from foreclosure, Dr. Lewis needed to seek protection under Chapter 13 of the Bankruptcy Code, while the Rycraws should file a Chapter 7 case. At the meeting, Dr. Lewis signed a set of fully completed bankruptcy papers, including a petition, schedules, statement of affairs, and Chapter 13 Plan, together with an application to pay the filing fee for the bankruptcy case in installments.[6] Similar documents (with the exception of a Chapter 13 Plan) were prepared for the Rycraws.[7]

The parties discussed the issue of attorneys' fees at the January 8, 2004, meeting. Mr. Janak informed Dr. Lewis and the Rycraws that his fee for services in a Chapter 13 case was $2,000, and that he would charge the Rycraws $700 for his work in their Chapter 7 case. These fees were in addition to the filing fees of $209 and $194 which would have to be paid to the clerk of the bankruptcy court. Mr. Janak told Dr. Lewis that her fees for the Chapter 13 case could be provided for in the Chapter 13 plan, but that arrangements for payment of the fees for the Rycraw case needed to be made now. Mr.

Janak then obtained a post-dated check from Dr. Lewis in the amount of $1,101. The amount of the check purportedly represented: (1) the $209 filing fee for Dr. Lewis' bankruptcy case; (2) the $194 filing fee for the Rycraw case; and (3) the $700 attorney fee for the Rycraw case.[8] According to Dr. Lewis, Mr. Janak acknowledged that the taking of a post-dated check was "wrong" but that he took the check because he wanted to help both her and the Rycraws. Mr. Janak also assured Dr. Lewis that he would "never" cash the post-dated check.[9] Mr. Janak did not obtain any funds from the Rycraws at this meeting.

At the time they filed their bankruptcy cases, both the Rycraws and Dr. Lewis filed applications to pay their filing fees in installments. Mr. Janak signed each of these applications as counsel. Each of the applications contained the following representation:

> I further certify that I have not paid any money or transferred any property for services in connection with this case and that I will neither make any payment or transfer any property for services in connection with this case until the filing fee is paid in full.[10]

Under the terms of the applications, both Dr. Lewis and the Rycraws represented

---

6. *See Trustee Exs. 2, 3 and 4.* All of these documents are dated January 8, 2004, the date that Dr. Lewis met Mr. Janak *for the first time.* It is beyond the ken of the Court to understand how Mr. Janak could have prepared all of these documents at his first meeting with Dr. Lewis, especially when the meeting did not even occur at his offices. However, this is the only version of events given to the Court, and the Court has little choice but to accept it.

7. *See Trustee Exs. 8 and 9.* The Court has the same questions with respect to the preparation of these documents as it does with the documents prepared on behalf of Dr. Lewis.

8. The mathematics here are imprecise. After subtracting the filing fees from the $1,101, one is left with $698, not $700. In any event, this sum approximates the attorney fee which Mr. Janak intended to charge in the Rycraw case.

9. In closing argument, Mr. Janak admitted that he had taken such post-dated checks in at least two other cases.

10. *Trustee's Exs. 4 & 9.*

that they would pay their filing fees in full in one installment on or before February 10, 2004.[11] The Court granted each of the applications.

Concurrently with the filing of the bankruptcy petitions, Mr. Janak filed statements of his intended compensation in each case. In the Dr. Lewis case, Mr. Janak stated that he had agreed to a fee of $2,000, that he had been paid no funds as of January 8, 2004, and that the entire balance of $2,000 remained due and owing.[12] In the Rycraw case, Mr. Janak stated that the parties had agreed on a fee of $700, that he had been paid nothing to date, and that the source of fee payment would be the Rycraws.[13] At the time these statements were filed, Mr. Janak had already received the post-dated check from Dr. Lewis. The issuance and receipt of the post-dated check was not disclosed in either of the statements of compensation, or anywhere in the schedules or statement of affairs in the Lewis or the Rycraw cases. Indeed, in the statement of affairs in the Rycraw case, the Rycraws and Mr. Janak affirmatively represented that no fees had been paid at the time of filing.[14]

On January 30, 2004, Dr. Lewis obtained a cashier's check in the sum of $1,101 payable to Mr. Janak. The sources of funds for the cashier's check was the post-petition retirement income of Dr. Lewis.[15] One day later, she delivered the cashier's check to Mr. Janak. Upon receipt of the cashier's check, Mr. Janak returned the post-dated personal check to Dr. Lewis. Shortly thereafter, Mr. Janak caused the cashier's check to be deposited into the "firm account" of his law firm, which he calls "The Timothy Group, PLC." Mr. Janak is the only member of that firm. The record is silent as to the type of account into which the cashier's check was deposited; i.e., whether the account was the general operating account for the law firm or some manner of trust account.

Upon delivery of the cashier's check to Mr. Janak, Dr. Lewis expected the filing fees in her case and the bankruptcy case of the Rycraws to be immediately paid. This did not happen. In the time between February 10 and February 18, 2004, Dr. Lewis received two letters from the office of the Clerk of this Court advising her that the filing fees in her case had not been paid. She then contacted Mr. Eck's office in an attempt to discover the reason for the non-payment. Thereafter, on February 19, 2004, Mr. Janak paid the filing fees in both the Lewis and Rycraw cases. The source of the payment is not disclosed. The Court will not assume that proceeds of the cashier's check were used to pay these filing fees.

To the extent that "Conclusions of Law" contains items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

In many ways, this case exposes the fragility of the bankruptcy system. Ours is a system built upon the principle of full and candid disclosure. Debtors must truthfully and accurately list all of their

---

11. *Id.*

12. *Trustee's Ex. 2, p. 26.*

13. *Trustee's Ex. 8, p. 29.*

14. *Id., p. 22.*

15. Dr. Lewis so testified; in addition, the testimony is consistent with the information contained in Dr. Lewis' schedules, in which she stated under oath that she had cash on hand and on deposit in the total amount of $175 as of the date her case was filed. *See id., p. 4.*

assets and all of their liabilities. Counsel must honestly and completely disclose the full nature of their relationship with their clients. Creditors must honestly and correctly calculate and state their claims. It is these disclosures which allow the public to have confidence in the system, and hopefully to believe that bankruptcy laws exist to protect the "honest but unfortunate" debtor, that those creditors who receive funds receive only their just and proper share, and that those who represent debtors perform a service beyond satisfaction of their selfish avarice. Without those beliefs, public confidence in the bankruptcy process, and perhaps far more, is placed at risk.

The fragility of the system is found in the fact that many of the required disclosures are difficult if not impossible to police, at least in a cost-effective manner.[16] Often times, the problem is discovered by happenstance. Such was the case here. The only reason that Mr. Eck became aware of the facts of this case was because Dr. Lewis called him in an effort to discover why her filing fee had not been timely paid. Had the fee been timely paid, the Court surmises that none of the facts described in this opinion would ever have been revealed. Make no mistake; Mr. Eck has done his job well; however, no one can seriously dispute that a fortuitous chain of circumstances helped expose this conduct to the light of day. We cannot rely upon such circumstances in every case. Instead, we must rely upon the integrity and expertise of those who seek to practice in the bankruptcy arena.

Where either of those qualities are found to be lacking, swift and decisive action must be taken to enforce the operative provisions of the Bankruptcy Code. This is not an area where the Court will engage in or tolerate a game of "catch me if you can," or allow "I guess I did not know better" to be a palatable excuse.

The Motion raises several significant issues. The Court must determine whether Mr. Janak made adequate disclosure under § 329 of the Bankruptcy Code and Bankruptcy Rule 2016. It must decide whether the statements which were made in order to induce the Court to allow Dr. Lewis and the Rycraws to pay their filing fees in installments were accurate and forthright. It must determine whether the conduct of Mr. Janak in taking a post-dated check, and later a cashier's check, from Dr. Lewis was proper. It must decide whether it was permissible for Dr. Lewis to use property of her bankruptcy estate to pay the filing and attorney's fees for the Rycraws' bankruptcy case. Finally, the Court must administer an appropriate sanction for any improper conduct, and determine whether further disclosures are required of Mr. Janak.

*Disclosure*

Disclosure of compensation arrangements between debtors and their counsel is an essential part of the bankruptcy process. As noted in a leading treatise on the subject, "[c]ourts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to

---

**16.** For example, if counsel for a debtor states that he or she spent a particular amount of time performing a task, it would be virtually impossible for someone to dispute the same, even if the time records of that professional were audited. We must rely upon his or her integrity. Similarly, it would be unrealistic to expect that every Chapter 7 or 13 Trustee, or

every debtor-in-possession in a Chapter 11 case, had the wherewithal to conduct a forensic audit of each and every claim submitted. The bankruptcy system functions on the premise that the overwhelming majority of those who utilize it are honest, that those who are dishonest are likely to be caught, and that the penalties for acting dishonestly are severe.

the fees of the attorney."[17] The following testimony by Dr. Lewis is a chilling reminder of such vulnerability, dependency, and reluctance:

Q. [By Mr. Eck] And haven't you expressed some concern against testifying against your attorney? You don't want to get him—make him mad at you, you don't want to get him in trouble? Haven't you said that on one or two occasions?

A. I have.[18]

\* \* \* \* \* \*

Q. Okay. Do you recall giving Mr. Janak the postdated check?

A. Well, it—you know, I—I guess it is important now that the truth must be spoken, and that's what I intend to do. I indicated to Mr. Janak, and he told me then that was not the proper thing to do. He actually–

Q. He told you he knew he wasn't supposed to take—

A. He told me. He said, but I'm going to try to help you all. And as a result I told him I did not have any money right now, but in a few days I would, and if he would just take this postdated check, because my son-in-law's check was being garnished because of the liens. And I was already upset about the liens that I didn't know anything about.

*So anything to save my home at that moment. I told him, "If you will just work with me, I'll work with you." So that's how that came down.*[19]

While the words of Dr. Lewis portray her despair over the possibility of losing her home, they do not convey the full effect of her testimony. Having heard Dr. Lewis and observed her demeanor, the Court is convinced that she was truly desperate to save the Residence, and wished to do nothing to jeopardize her relationship with Mr. Janak. She had no way of knowing whether the payments sought by Mr. Janak were proper or improper. It is for this reason that the attorney, and not the client, is charged with the knowledge of the operative provisions of the Bankruptcy Code and the canons of ethics when it comes to the matter of fees and disclosure. When something is amiss in this area, the debtor/client is probably the least likely person to know.

This Court has previously held that:

The disclosure requirements for attorneys representing debtors in bankruptcy cases are contained in the following section of the Bankruptcy Code:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

17. 3 Collier on Bankruptcy ¶ 329.01 at p. 329–3 (Alan N. Resnick & Henry J. Sommer, eds., 15th rev. ed.2002) (citations omitted).

18. *See Docket No. 41,* p. 8, line 25 through p. 9, line 4.

19. *Id.,* p. 12, line 24, through p. 13, line 13 (emphasis added).

§ 329(a). The appropriate disclosure must be made within fifteen days after the case is filed, and must include details regarding the sharing of the fee with other attorneys, unless those attorneys are partners or associates of the attorney representing the debtor. *See* Fed. R. Bankr.P.2016(b) (West 1999). The United States Court of Appeals for the Tenth Circuit has ruled that

> [T]he disclosure requirements imposed by § 329 are "mandatory not permissive." *In re Bennett*, 133 B.R. 374, 378 (Bankr.N.D.Tex.1991). Accordingly, an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, *id.* at 379; *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr.N.D.Tex.1986), and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney, *In re Saturley*, 131 B.R. 509, 522 (Bankr.D.Me.1991); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 759 (Bankr.N.D.Tex.1988); *In the Matter of Chambers*, 76 B.R. 194, 195 (Bankr.M.D.Fla.1987); *In re Chapel Gate*, 64 B.R. at 574, 575.

*In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *accord, In re Crayton*, 192 B.R. 970, 981 (9th Cir. BAP1996); *see also In re Remmen*, 222 B.R. 623 (Bankr.D.Neb.1998) (ordering disgorgement of $5,000.00 where payment of retainer was not disclosed). The fact that the failure to properly disclose may have been the result of negligence or inadvertence does not "vitiate the failure to disclose." *See In re Park–Helena Corp.*, 63 F.3d 877, 881 (9th Cir.1995), *cert. denied* 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996); *accord, In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (10th Cir. BAP1997).

Counsel for a debtor "has an affirmative duty to disclose *all* its connections with the debtor, including fees paid in the year preceding the bankruptcy filing." *See In re Saturley*, 131 B.R. 509, 516 (Bankr.D.Me.1991) (emphasis in original). "Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient. Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *Id.* at 517 (citations omitted). The information is to be placed in the form required under Bankruptcy Rule 2016(b); a court is not required to look in the statement of affairs or in other pleadings in the case to determine the relationship between debtor and his or her attorney. *See id.; see also In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir.1995) (ordering disgorgement where retainer was disclosed in statement of affairs, but not in Rule 2016 statement); *see also In re Smitty's Truck Stop, Inc.*, 210 B.R. at 849 (same).[20]

These disclosure requirements are essential to the preservation of the integrity of the bankruptcy process. As the United States Supreme Court noted almost a century ago, such disclosure is necessary to allow for the proper policing of "the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure."[21] They must be

---

**20.** *In re Woodward*, 229 B.R. 468, 473–74 (Bankr.N.D.Okla.1999) (footnote omitted).

**21.** *In re Wood*, 210 U.S. 246, 253, 28 S.Ct. 621, 52 L.Ed. 1046 (1908).

strictly enforced. Attorneys who fail to fully and properly disclose do so at their peril.

The provisions of § 329 are implemented by Bankruptcy Rules 2016 and 2017. Rule 2016(a) requires that

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.[22]

Under Bankruptcy Rule 2017, the Court has the power to review the fee arrangement between the debtor and his or her counsel, and order return of any fees which the Court finds to be excessive.[23]

■ The Court finds that Mr. Janak has failed to make the following disclosures which were required under Bankruptcy Rule 2016:

1. Receipt of the post-dated check from Dr. Lewis;

2. Receipt of the cashier's check from Dr. Lewis; and

3. Use of funds received from Dr. Lewis to pay the attorney fee which Mr. Janak has claimed in the Rycraw case.

The non-disclosure of these critical facts rendered the actual disclosures meaningless. One looking at the file would conclude that Mr. Janak had received nothing of value from Dr. Lewis or the Rycraws on January 8, 2004, and would have no reason to believe that Mr. Janak was somehow securing the payment of his fees by use of a post-dated check. Any one of these failures standing alone would be sufficient to justify denial of an award of fees to Mr. Janak. Taken collectively, they leave the Court with little choice but to order disgorgement of the $698 in fees received for services performed in the Rycraw case, and denial of all fees sought in the Lewis case.

■ The Court feels compelled to address one argument that it expected from Mr. Janak but did not hear: that the issuance of a post-dated check does not constitute a transfer of property which need be disclosed. The argument would go something like this: "well, judge, since I can't cash the check until some future date (the date on the check), the check has no value at the time it was received, and thus I was not required to tell you or anyone else of its existence." Had the argument been made, it would have been flatly rejected. Such a reading of the disclosure requirements would endorse the exact manner of "coy or incomplete" disclosures which this and all other courts have found wanting.[24] To put it simply, post-dated checks are property, and receipt of any and all property by counsel for a debtor in payment of or as security for payment of fees *must be disclosed.* Anything less is a violation of the spirit and

---

22. Fed. R. Bankr. P.2016(b).

23. *See* Fed. R. Bankr. P.2017.

24. *See Woodward, supra,* 229 B.R. at 474 (and cases cited therein).

the letter of § 329 and Bankruptcy Rule 2106.

These non-disclosures have ramifications which potentially go beyond the provisions of the United States Bankruptcy Code. Under Title 18 of the United States Code, it is a crime to make a "false or fraudulent representation" in the course of a bankruptcy case, if that representation is part of a scheme to defraud.[25] The Oklahoma Code of Professional Responsibility prohibits an attorney from knowingly making "a false statement of fact or law to a tribunal."[26] In the present case, the failure of Mr. Janak to disclose receipt of the post-dated check and/or the cashier's check may rise to the level of a violation of one or both of these statutory provisions. The Court will therefore cause a copy of this Memorandum Opinion and the related Judgment to be sent to the office of the United States Attorney and the Oklahoma Bar Association for review and such further action as those agencies may deem appropriate.

*The Applications to Pay Filing Fees in Installments*

■ In both the Lewis and Rycraw cases, the debtors did not pay the filing fee at the time their bankruptcy petitions were filed. Instead, they filed applications to pay their fees in installments. These applications were prepared by Mr. Janak and contained representations that neither Dr. Lewis nor the Rycraws had paid any money or transferred any property to Mr. Janak. Mr. Janak also signed each of these applications, thereby attesting to the truth of the representations contained therein.[27] At the time these applications

were filed, Mr. Janak had taken the post-dated check from Dr. Lewis.

■ The payment of filing fees in installments is governed by Bankruptcy Rule 1006(b), which provides that

**(b) Payment of filing fee in installments**

**(1) Application for permission to pay filing fee in installments**

A voluntary petition by an individual shall be accepted for filing if accompanied by the debtor's signed application stating that the debtor is unable to pay the filing fee except in installments. *The application shall state the proposed terms of the installment payments and that the applicant has neither paid any money nor transferred any property to an attorney for services in connection with the case.*

**(2) Action on application**

Prior to the meeting of creditors, the court may order the filing fee paid to the clerk or grant leave to pay in installments and fix the number, amount and dates of payment. The number of installments shall not exceed four, and the final installment shall be payable not later than 120 days after filing the petition. For cause shown, the court may extend the time of any installment, provided the last installment is paid not later than 180 days after filing the petition.

**(3) Postponement of attorney's fees**

*The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who*

---

**25.** *See* 18 U.S.C.A. § 157.

**26.** 3.3(a)(1), *Rules of Professional Conduct*, Okla. Stat. Ann. tit. 5, Ch. 1, App. 3–A (West 2001).

**27.** *See* Fed. R. Bankr. P. 9011(b)(3) (signature of an attorney on a pleading constitutes a certification by the attorney that the factual contentions contained therein have or are likely to have "evidentiary support.").

*renders services to the debtor in connection with the case.*[28]

The delivery of a post-dated check by a prospective debtor constitutes a transfer of property for purposes of this rule.[29]

In the present case, Mr. Janak prepared and submitted the application for payment of filing fees in installments to Dr. Lewis. At the time he did so, the application contained a false statement; namely, that Dr. Lewis had not transferred any money or property to Mr. Janak. Mr. Janak knew or should have known that the statement was false. Such conduct by Mr. Janak would, standing alone, be sufficient to justify a denial of all attorney's fees in the Lewis case.[30]

*The Post–Dated Check*

■ It is undisputed that Mr. Janak solicited and obtained from Dr. Lewis a post-dated check in the amount of $1,101. This fact was not disclosed by Mr. Janak at the time the bankruptcy cases were filed. At the evidentiary hearing on this matter, Mr. Janak chose not to inform the Court of his reasons for doing so. The only "evidence" on this issue was the testimony of Dr. Lewis to the effect that Mr. Janak knew the taking of such a check was inappropriate, and that he took the check in order to be able to assist Dr. Lewis and the Rycraws. Arguably, the effect of the post-dated check was to create some form of secret encumbrance on the future income of Dr. Lewis in order to secure payment of the fees owed to Mr. Janak in the Rycraw case. Mr. Janak provided no other explanation, and the Court is at a loss to otherwise understand why Mr. Janak wanted the post-dated check.

As noted above, the taking of the post-dated check was not disclosed, and such non-disclosure violated numerous provisions of the Bankruptcy Code and the Bankruptcy Rules. Setting aside the issue of disclosure, the Court has been able to unearth no authority for the taking of a post-dated check in payment of (or as security for the payment of) attorney's fees in a bankruptcy case. Mr. Janak has provided no authority that would support his conduct. The Court concludes that the taking of the post-dated check was not authorized under the Bankruptcy Code.[31]

---

28. Fed. R. Bankr. P. 1006(b) (emphasis added).

29. *See In re Jastrem*, 224 B.R. 125, 128 (Bankr.E.D.Cal.1998), *aff'd*, 253 F.3d 438 (9th Cir.2001) ("The respondent received the four post-dated checks from the debtor prior to payment in full of the filing fee. It is inconsistent to argue, on the one hand, that the post-dated checks are negotiable instruments which may be presented and paid after the filing of the petition and, on the other hand, [argue] that those same checks are not 'property' for purposes of Rule 1006(b)." (footnote omitted)).

30. *See id.* at 128 n. 5 ("Were the court to conclude that presentment of the [post-dated] checks for payment from the debtor's account was permissible under section 362(b)(11), it would sanction counsel in an amount equal to all attorney's fees collected for his failure to disclose the receipt of the post-dated checks in his Rule 2016(b) Statement and for causing the debtor to request an installment filing fee in violation of Rule 1006(b).").

31. Indeed, the use of post-dated checks as a method of fee payment has been consistently rejected by bankruptcy courts. *See, e.g., In re Hessinger & Associates*, 165 B.R. 657, 659 (Bankr.N.D.Cal.1994), *appeal dismissed by In re Eleccion*, 178 B.R. 807 (9th Cir. BAP 1995) ("An attorney cannot avoid the effect of sections 362 and 524 of the Code by taking a postdated check. The taking of a postdated check by an attorney for a bankruptcy fee is a credit transaction. Presentment of the check for payment is an act to collect a prepetition debt, and is accordingly unlawful.") (citations omitted); *In re Symes*, 174 B.R. 114, 118 (Bankr.D.Ariz.1994) (finding use of promissory notes or post-dated checks issued pre-petition as a means of collecting attorney's fees to be violative of the automatic stay provisions of § 362); *In re Zapanta*, 204 B.R. 762

The taking of the post-dated check raises the specter of problems in other areas of the law as well. Under the Oklahoma Code of Professional Conduct:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> > (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
> >
> > (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
> >
> > (3) the client consents in writing thereto.[32]

When he took the post-dated check, it seems that Mr. Janak took some manner of interest (possessory, security, or otherwise pecuniary in nature) in the future earnings of Dr. Lewis. There is nothing in the record to indicate that the nature of this transaction was disclosed to Dr. Lewis in writing, that she had the opportunity to seek independent counsel as to its propriety and/or whether it was in her best interests, or that she ever gave her written consent to the transaction. The Court leaves the determination of ethical violations to the regulatory body charged with their enforcement. It will provide a copy of this Memorandum Opinion and the related Judgment to the Oklahoma Bar Association so that it may take whatever action it deems appropriate.

*The Cashier's Check*

■ Approximately three weeks after he filed the Chapter 13 case for Dr. Lewis, Mr. Janak exchanged the post-dated check for the cashier's check. Dr. Lewis obtained the cashier's check using pension and social security benefits received after she filed her bankruptcy petition. The cashier's check was deposited in the "firm account" of Mr. Janak's law firm. The Court presumes this to have been the general operating account for said law firm; the record is silent as to whether the monies were placed in a trust account or otherwise deemed to be held in trust by Mr. Janak. The ultimate destiny of these funds was not revealed to the Court.[33]

■ Under §§ 541 and 1306, the monies used to fund the cashier's check were property of Dr. Lewis' bankruptcy estate.[34] The use of those funds for items other than the living expenses of Dr. Lewis and payments to creditors under the auspices of a Chapter 13 plan was improper where, as here, Dr. Lewis has proposed to pay her unsecured creditors a minimal per-

---

(Bankr.S.D.Cal.1997) (same); *Jastrem, supra,* 224 B.R. at 128 (and cases cited therein) (same).

**32.** 1.8(a), *Rules of Professional Conduct,* OKLA. STAT. ANN. tit. 5, Ch. 1, App. 3–A (West 2001).

**33.** Mr. Janak paid the filing fees for Dr. Lewis and the Rycraws on February 19, 2004. Whether he used proceeds of the cashier's check to do so is unknown. Mr. Janak offered no evidence that would allow the Court to trace the funds.

**34.** *See* § 541(a)(1) (property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case"); *see also* § 1306(a) (in a Chapter 13 case, property of the estate includes property listed in § 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7"); *see also Matter of Ross,* 18 B.R. 364, 367 (N.D.N.Y. 1982), *aff'd sub nom. Regan v. Ross,* 691 F.2d 81 (2nd Cir.1982) (pension benefits are property of Chapter 13 bankruptcy estate).

centage of their claims.[35] It was equally improper for Mr. Janak to take the cashier's check and use Dr. Lewis' money to pay the fees owed by her daughter and son-in-law. As someone who represents himself to be a skilled bankruptcy practitioner, Mr. Janak either knew or should have known better. In order to remedy this situation, Mr. Janak will be required to disgorge the entire amount of the cashier's check, less the amount of Dr. Lewis' filing fee.

*Additional Disclosure Sought in the Motion*

■ The Trustee also contends that The Timothy Group, PLC should be required to make a complete review and file verified disclosures, under oath, concerning all transactions with the Debtor in this case and with all debtors in all other cases filed by Mr. Janak and/or his firm in the United States Bankruptcy Court for the Northern District of Oklahoma, within the past year.[36] At the hearing on this matter, Mr. Janak argued that such disclosure was not necessary, as Mr. Eck "has been very thorough since this incident has taken place" in his inquiries regarding fee arrangements.[37] Notwithstanding the protests of Mr. Ja-

nak, the Court believes that additional disclosure is appropriate for several reasons.

■ It is well established that bankruptcy courts have an independent duty to review the fee arrangements between debtors and their counsel for reasonableness.[38] While the Court has great respect for Mr. Eck's judgment, the Court is not at liberty to delegate its duties of fee review. In addition, Mr. Eck is not the trustee in all of the cases handled by Mr. Janak; some of the cases are Chapter 7 cases, and some were completed prior to the filing of the Motion. In those cases, the opportunity for meaningful review by Mr. Eck is limited or non-existent. Finally, the lack of full and candid disclosure by Mr. Janak to date demonstrates the need for further disclosure.[39] Accordingly, the Trustee's request for further disclosure shall be granted.

Within twenty-one (21) days of the entry of this Memorandum Opinion and the related Judgment, Mr. Janak shall file under oath a supplemental disclosure of the following information with respect to each of the cases in which he has appeared as counsel for debtors in the United States Bankruptcy Court for the Northern District of Oklahoma since January 1, 2003:

---

35. In her first amended plan filed on March 19, 2004, Dr. Lewis has proposed a distribution of 6.87% to unsecured creditors. *See Docket No. 28.* The Trustee has objected to such a low percentage based upon the facts of this case. *See Docket No. 36.*

36. *Motion,* ¶ 12.

37. *See Docket No. 41,* p. 23, lines 7—8.

38. *See In re Yates,* 217 B.R. 296, 300 (Bankr. N.D.Okla.1998) ("A bankruptcy court has an independent duty to review all requests for fees to determine their allowability under § 330 of the Bankruptcy Code, even if no party in interest objects to the fees.") (citing *In re Busy Beaver Building Centers, Inc.,* 19

F.3d 833, 841 (3d Cir.1994) and *In re Evans,* 153 B.R. 960, 968 (Bankr.E.D.Pa.1993)).

39. There are several other puzzling aspects of this case. How is it that Mr. Janak was present at the meeting with Dr. Lewis, the Rycraws, and Mr. Howard? What is the referral arrangement (if any) between Mr. Janak and Mr. Howard or Great Plains Mortgage? How was Mr. Janak able to prepare petitions, schedules, statements of affairs and (with respect to Dr. Lewis) a chapter 13 plan at the time he first met Dr. Lewis and the Rycraws? The answers to some of these questions lie beyond the scope of the Motion.

1. The names of the debtors, the case number, and the chapter under which bankruptcy relief was sought;

2. The amount of fees agreed to be paid to Mr. Janak;

3. The amount of fees actually paid to Mr. Janak;

4. The timing of such payment (i.e., whether the payment was made pre– or post-petition);

5. The manner of payment (cash, check, through the Chapter 13 Trustee, etc.);

6. Whether Mr. Janak sought or obtained any sort of security for the payment of said fees, including but not limited to the receipt of post-dated checks;

7. All occasions where Mr. Janak obtained funds from his clients for the purposes of payment of filing fees; and

8. Whether the funds obtained for the payment of filing fees were actually used for that purpose.

Said disclosures may be made by the filing of a pleading in this case: Mr. Janak is not at this time required to make a separate filing in each case where he has appeared as counsel for a debtor. Copies of the disclosures must be served upon Mr. Eck and the Office of the United States Trustee. Should Mr. Janak fail to timely provide these disclosures, the Court will enter an order requiring Mr. Janak to show cause why he should not be prohibited from further representation of debtors before this judge. If the disclosures are made, the Court reserves the right to take further action after review of said disclosures.

## Conclusion

The Motion is sustained. Mr. Janak is to disgorge the sum of Eight Hundred Ninety–Two and no/100ths Dollars ($892.00) to Mr. Eck, on or before May 25, 2004 and report such disgorgement to the Court upon completion. All requests for fees in this case and in the Chapter 7 case of Robert Lee Rycraw and Sylvia Deniece Rycraw, Case No. 04–10136–M, are disallowed. Mr. Janak is to make the disclosures specified above on or before June 2, 2004. If timely disclosures are not made, the Court will issue an order to Mr. Janak to show cause why he should not be prohibited from further practice before the undersigned judge.

A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

## JUDGMENT

THIS MATTER comes before the Court pursuant to the Motion For Review of Debtor's Transactions With Attorney and Request For Hearing filed by Lonnie D. Eck, the Standing Chapter 13 Trustee in this District, filed his in this case. The issues having been duly considered and a decision been reached, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Motion For Review of Debtor's Transactions With Attorney and Request For Hearing filed by Lonnie D. Eck, the Standing Chapter 13 Trustee in this District, be, and the same hereby is, granted.

IT IS FURTHER ORDERED that Timothy C. Janak and/or The Timothy Group, PLC, shall, on or before May 24, 2004, disgorge to Lonnie D. Eck the sum of Eight Hundred Ninety–Two and no/100ths Dollars ($892.00) and report such disgorgement to the Court upon completion.

IT IS FURTHER ORDERED that on or before June 2, 2004, Timothy C. Janak shall file under oath a supplemental disclo-

sure of the following information with respect to each of the cases in which he has appeared as counsel for debtors in the United States Bankruptcy Court for the Northern District of Oklahoma since January 1, 2003:

1. The names of the debtors, the case number, and the chapter under which bankruptcy relief was sought;

2. The amount of fees agreed to be paid to Timothy C. Janak and/or The Timothy Group, PLC;

3. The amount of fees actually paid to Timothy C. Janak and/or The Timothy Group, PLC;

4. The timing of such payment (i.e., whether the payment was made pre– or post-petition);

5. The manner of payment (cash, check, through the Chapter 13 Trustee, etc.);

6. Whether Timothy C. Janak and/or The Timothy Group, PLC sought or obtained any sort of security for the payment of said fees, including but not limited to the receipt of post-dated checks;

7. All occasions where Timothy C. Janak and/or The Timothy Group, PLC obtained funds from clients for the purposes of payment of filing fees; and

8. Whether the funds obtained for the payment of filing fees were actually used for that purpose.

Said supplemental disclosure shall be filed in this bankruptcy case.

IT IS FURTHER ORDERED that a copy of said disclosures shall be served by Mr. Janak upon Lonnie D. Eck and the Office of the United States Trustee.

IT IS FURTHER ORDERED that should Mr. Janak fail to provide these disclosures in a timely fashion, the Court will enter an order requiring Mr. Janak to show cause why Timothy C. Janak and The Timothy Group, PLC should not be prohibited from further representation of debtors before this judge.

IT IS FURTHER ORDERED that if the disclosures are made, the Court reserves the right to take further action after review of said disclosures.