# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 19, 2011  Decided December 20, 2011

No. 10-7178

HENRY N. DIXON AND CUONG THANH PHUNG,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00297)

*Gregory L. Lattimer* argued the cause and filed the briefs for appellants.

*Stacy L. Anderson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: EDWARDS, GINSBURG,[*] and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellants Henry Dixon and Cuong Thanh Phung were arrested in 2008 and 2009, respectively, in the District of Columbia ("the District" or "D.C." or "the city") for speeding in excess of thirty miles per hour ("mph") above the posted speed limit. They filed this class action on behalf of all individuals who have been arrested and subjected to criminal penalties for such speeding in the last three years. They allege that the District's traffic enforcement policies deny them the equal protection of law and thus violate the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

Specifically, Appellants object to the District's policy of subjecting motorists who speed in excess of thirty mph over the speed limit to different penalties, depending on how they are caught. A motorist who is stopped by a police officer for speeding over thirty mph above the speed limit is subject to arrest, and possibly criminal prosecution and imprisonment. *See* 18 D.C. CODE MUN. REGS. § 2200.12 (Lexis 2009). A motorist who is detected speeding over thirty mph above the posted speed limit by the District's Automated Traffic Enforcement System ("the ATE" or "the System") is subject to only a contestable civil fine. *See* D.C. CODE § 50-2209.01–50-2209.02 (2001). In other words, motorists speeding over thirty mph above the speed limit face substantially stiffer penalties if they are apprehended by police officers than if they are detected by the ATE.

The District Court granted the District's motion to dismiss

[*] Judge Ginsburg took senior status after oral arguments were heard in this case.

under Federal Rule of Civil Procedure 12(b)(6), holding that Appellants had failed to state a claim upon which relief could be granted. *Dixon v. District of Columbia*, 753 F. Supp. 2d 6 (D.D.C. 2010). In reaching this judgment, the District Court first acknowledged that the Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment. *Id*. at 8 n.1 (citing *Bolling*, 347 U.S. at 499). The court next posited that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Id*. at 8 (quoting *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985)). The court then found that, because motorists who are apprehended by police officers for speeding are not similarly situated to motorists detected speeding by the ATE, the two groups could be subjected to different penalties for the same conduct. *See id.* at 8–9. The District Court thus concluded that the District's traffic enforcement policies do not run afoul of the equal protection guarantee of the Fifth Amendment. *Id*. at 9.

We affirm the District Court's judgment, albeit on different grounds. Appellants may be correct that motorists who are stopped by police officers for speeding in excess of thirty mph above the speed limit are similarly situated to at least *some* motorists detected engaging in identical conduct by the ATE. Their claim still lacks merit, however, because Appellants' challenge cannot survive rational basis review. The District's disputed traffic enforcement policies neither burden a fundamental right nor target a suspect class. Therefore, in "attacking the rationality of the [District's] legislative classification[, Appellants] have the burden to negative every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citations omitted) (internal quotation marks omitted). Appellants have not met this burden.

# I. Background

## A. *Facts*

In 1999, the District introduced the ATE to deter speeding violations. The System employs radars and cameras to detect and photograph instances of speeding throughout the city. After the ATE records a speeding violation, the Mayor's office automatically mails "a summons and a notice of infraction to the name and address of the registered owner of the vehicle on file with the Bureau of Motor Vehicle Services or the appropriate state motor vehicle agency." D.C. CODE § 50-2209.02(b). The captured image is treated as "prima facie evidence of an infraction and may be submitted without authentication." *Id.* § 50-2209.01(b). Upon receipt of the notice and summons, the owner of the vehicle becomes liable for the payment of a civil fine assessed for the infraction, "unless the owner can furnish evidence that the vehicle was, at the time of the infraction, in the custody, care, or control of another person." *Id.* § 50-2209.02(a). The owner of the vehicle may also request a hearing to challenge the infraction. *Id.* § 50-2209.02(c). It appears that no other penalties may be imposed against a motorist for any speeding violations detected by the ATE.

Speeding motorists also may be apprehended by officers of the Metropolitan Police Department ("MPD"). Indeed, for nearly two decades, a MPD General Order has required officers to effectuate arrests of motorists who operate their vehicles "over 30 mph in excess of the posted speed limit." METRO. POLICE DEP'T, GENERAL ORDER 303.1, at 4 (1992), *available at* http://www2.justiceonline.org/dcmpd/GO30301.pdf. A District regulation further provides that such motorists may be subject to criminal prosecution, and, upon conviction, a fine of $300 or imprisonment for up to ninety days. 18 D.C. CODE MUN. REGS. § 2200.12.

A MPD officer caught Appellant Dixon speeding in excess

of thirty mph above the speed limit in 2008. Compl. ¶ 14, *reprinted in* Joint Appendix ("J.A.") 3. Dixon was arrested and detained for several hours. *Id.* He faced a maximum punishment of a $300 fine or ninety days of incarceration. *Id.* A MPD officer caught Appellant Phung speeding more than thirty mph above the speed limit in 2009. *Id.* ¶ 15. Phung was also arrested and detained, and he faced the same potential penalties. *Id.* Appellants filed this class action on behalf of allegedly thousands of individuals who have been subjected to arrest and criminal prosecution for speeding over thirty mph beyond the limit in the last three years. *See id.* ¶¶ 2, 16, 17. They assert that many other motorists, who have been detected engaging in identical conduct by the ATE, have faced only civil fines. The District does not dispute this. Finally, Appellants argue that the District's policy of subjecting motorists to disparate punishment based on the method of detection violates the equal protection guarantee of the Fifth Amendment. *Id.* ¶ 4; *see also Bolling*, 347 U.S. at 499. They seek declaratory and remedial injunctive relief, damages, fees, and costs. Compl. ¶ 4.

## B. *Proceedings Before the District Court*

The District Court granted D.C.'s motion to dismiss for failure to state a claim. The District Court stated that "[t]he threshold inquiry in evaluating an equal protection claim is . . . to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *Dixon*, 753 F. Supp. 2d at 8–9 (first alteration in original) (quoting *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (internal quotation marks omitted)). The District Court found that motorists in Appellants' class – those who are caught speeding by MPD officers – are dissimilar to motorists detected speeding by the ATE. The District Court thus concluded that the District's traffic enforcement policies do not violate the equal protection

guarantee of the Fifth Amendment. *See id.* at 9. The District Court reasoned that when an officer directly observes a speeding motorist, that officer, by virtue of direct observation, has probable cause to effectuate a warrantless arrest of the motorist in the speeding vehicle. *See id.* In contrast, according to the District Court, when the ATE detects and records a speeding car through the use of radars and cameras, the police lack probable cause to effectuate a warrantless arrest, because no officer is present to confirm that the vehicle's *owner* was the actual *driver* who committed the infraction. *See id.* Based on this logic, the District Court dismissed Appellant's equal protection claim.

On appeal, Appellants contend that the District Court's judgment must be reversed, because it is entirely predicated on a faulty factual premise – *viz.* a motorist detected by the ATE cannot be arrested without a warrant, because there was no witness to his or her speeding violation. As Appellants point out, this premise does not always hold. The ATE employs both fixed-location cameras *and* mobile units of specifically trained officers equipped with radars and cameras. *See* Metro. Police Dep't, *Automated Speed Enforcement FAQs*, http://mpdc.dc.gov/ mpdc/cwp/view,a,1240,q,547977,mpdcNav_GID,1552,mpdc Nav,|31886|.asp (last visited Dec. 6, 2011), *reprinted in* J.A. 30–31. When a speeding vehicle is detected by fixed-location cameras, there is no officer who witnesses the speeding violation. But when a speeding vehicle is detected by a mobile radar unit, an officer of that unit is, at least arguably, in a position to abandon his or her station and equipment, pursue the speeding vehicle, and thereby attain probable cause to effectuate a warrantless arrest of the driver.

Appellants and the class they represent therefore appear to be similarly situated to motorists whose speeding is captured by members of the ATE's mobile radar units: Both groups of motorists could be directly observed by police officers, and, consequently, both could be subject to warrantless arrest. But

only those motorists who are observed speeding by police officers who are not members of mobile radar units are actually pursued, arrested, and subjected to criminal sanctions. And in Appellants' view, it is a violation of the equal protection guarantee for the MPD to arrest speeding motorists who speed in excess of thirty mph over the speed limit and are observed by an officer *without a camera – i.e.*, a traditional MPD officer – but not to arrest speeding motorists who speed in excess of thirty mph over the speed limit and are observed by an officer *with a camera – i.e.*, a member of a mobile radar unit.

## II. Analysis

### A. *Standard of Review*

"We review a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (2009) (citation omitted). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton*, 567 F.3d at 681 (alteration in original) (citation omitted). But the pleader must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, as the Supreme Court recently established, "[t]o survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted) (internal quotation marks omitted).

### B. *Equal Protection*

"[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."

*Romer v. Evans*, 517 U.S. 620, 631 (1996) (citation omitted). And as the Supreme Court explained in *FCC v. Beach Communications*,

> [w]hether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

508 U.S. at 313 (citations omitted).

Appellants do not seriously dispute that their claim must be reviewed under the highly deferential rational basis standard. There is no allegation here that the District's classification targets a suspect class. And while the Appellants imply that their claim involves the fundamental liberty of free mobility, "[t]he law of this land does not recognize a fundamental right to freedom of movement when," as here, "there is probable cause for arrest." *Hedgepeth v. Washington Metro. Area Transit Auth.*, 386 F.3d 1148, 1156 (D.C. Cir. 2004) (citation omitted). Thus, the District's policy is subject to rational basis review, and it is entitled to a presumption of rationality. *See, e.g.*, *Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (noting that a government "classification is accorded a strong presumption of validity," and, thus, "[t]he burden is on the one attacking the [governmental] arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record" (alterations in original) (citation omitted) (internal quotation marks omitted)).

In order to defeat the District's motion to dismiss their equal protection claim, Appellants "must allege facts sufficient

to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). And they must offer more than a "conclusory assertion that the policy is 'without rational basis.'" *Id.* Appellants have failed to satisfy this burden.

There is no question that D.C. has a legitimate interest in deterring speeding to ensure public safety. Moreover, it is rational for D.C. to conclude that it can best achieve this interest through the combination of individualized, targeted enforcement – *i.e.*, officer stops – and widespread enforcement – *i.e.*, ATE monitoring. What Appellants object to is that motorists who commit the same violation face strikingly different penalties. The imposition of different penalties against similarly situated motorists survives rational basis review, however, because each penalty advances the District's deterrence interest in a different way and at a different cost. In addition, the variable enforcement scheme increases the likelihood that speeding motorists will be detected, and, as a result, it serves as a greater deterrent to violations of traffic laws.

The threat of officer stops deters speeding, because such stops can result in the imposition of relatively strong sanctions. An individual officer can catch only so many speeding motorists. But when an officer witnesses a speeding motorist, that officer has probable cause to effectuate a warrantless arrest. *See Virginia v. Moore*, 128 S. Ct. 1598, 1604 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence . . . arrest is constitutionally reasonable." (citations omitted)). The officer may decide to undertake the arrest purely because of the motorist's speeding, or because of the officer's suspicion that something else is afoot. But in any event, if the speeding motorist is apprehended, he or she faces arrest, the possibility of prosecution, and, upon conviction, a criminal fine or imprisonment. 18 D.C. CODE MUN. REGS. § 2200.12. It is

precisely the severity of such sanctions that can be expected to deter some motorists from speeding. Thus, taking into account the relatively low risk of detection, the District may rationally assume that individual stops will not effectively deter speeding violations, if potential violators know that they will face nothing more than civil fines.

ATE monitoring poses a different calculus for police officers and motorists. When the ATE detects a speeding vehicle, it automatically directs a civil fine to the owner of that vehicle. *See* D.C. CODE § 50-2209.02(a)–(b). Because the ATE does not require police officers to pursue, detain, or arrest speeding motorists, it is axiomatic that the District's use of this enforcement system substantially increases the number of speeding motorists who will be detected and face a monetary penalty. It is true that the owner of a vehicle who receives a citation may request a hearing to demonstrate that he or she was not driving the car when the speeding violation occurred. *Id.* § 50-2209.02(c). But the District has good reason to assume that most persons who are cited via the ATE will not contest the fine, either because they are actually guilty of speeding or because objecting is not worth the aggravation.

Furthermore, the District may rationally assume that it would be too expensive and less effective for the city to pursue criminal sanctions, as opposed to civil fines, through the ATE. On the one hand, it is questionable whether there would be probable cause to arrest the owners of vehicles that are detected speeding via the ATE, because the detection system – consisting of manned and unmanned radars and cameras – does not automatically identify who is driving the speeding vehicle, only who owns that vehicle. Therefore, if the District sought to impose criminal sanctions, instead of civil fines, based on ATE detection, either more police officers would be required to invest more time in preparing arrest warrants, or members of mobile radar units would have to pursue speeding motorists, thereby

potentially compromising the ATE's goal of widespread, systematic, and low-cost detection. On the other hand, even if ATE detections, without more, might give police officers probable cause to arrest the owners of speeding vehicles, it is fair to assume that more vehicle owners would challenge the citations than do currently, and these challenges would likely increase administrative costs for the District.

Finally, there can be little doubt that the city is justified in assuming that its variable enforcement scheme deters more motorists from speeding than does an enforcement scheme that relies solely on targeted enforcement through officer stops. Motorists in D.C. now know that even if the risk of getting stopped for speeding by an officer is relatively low, they still face the higher risk of ATE detection and civil fines. The District is also justified in assuming that its scheme deters more motorists from speeding than does an enforcement scheme that relies solely on civil citations. All motorists must account for the background risk that speeding may result in arrest and potentially either a criminal fine or imprisonment. The District has decided that the best way to deter speeding is through the creation of some variability and uncertainty in the city's enforcement schemes. The wisdom of such a determination is not the appropriate subject of equal protection review.

## III. Conclusion

In sum, the District of Columbia's different treatment of motorists stopped by an officer for speeding in excess of thirty mph above the speed limit and motorists civilly cited for the same conduct via the ATE does not violate the equal protection guarantee of the Fifth Amendment. The District's policy is rationally related to a legitimate governmental interest in efficiently deterring violations of speed limits. Accordingly, we affirm the judgment of the District Court.

*So ordered.*