**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

In re: DAVID A. STEWART; TERRY P.
STEWART,

    Debtors.

------------------------------

SE PROPERTY HOLDINGS, LLC,

    Appellant,

v.

DAVID A. STEWART; TERRY P.
STEWART; DOUGLAS GOULD, Chapter
7 Trustee; RUSTON C. WELCH; WELCH
LAW FIRM, P.C.; KIRKPATRICK
BANK,

    Appellees.

Nos. 19-6103 & 19-6104

_____

**Appeals from the Bankruptcy Appellate Panel**
**(BAP Nos. WO-18-068 & WO-18-079)**
_____

Richard M. Gaal, McDowell Knight Roedder & Sledge, LLC, Mobile, Alabama (S.
Fraser Reid, III, McDowell Knight Roedder & Sledge, LLC, Mobile, Alabama, Mark B.
Toffoli, The Gooding Law Firm, Oklahoma City, Oklahoma, with him on the briefs), for
Appellant.

David Cheek, Cheek & Falcone, PLLC, Oklahoma City, Oklahoma (Ruston C. Welch,
Welch Law Firm, P.C., Oklahoma City, Oklahoma, with him on the brief) for Appellees.
_____

Before **HARTZ**, **BALDOCK**, and **EID**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Attorney Ruston Welch received $348,404.41 in fees for representing David and Terry Stewart in their Chapter 7 bankruptcy proceedings. This appeal arises out of his failure to disclose his fee arrangements and payments, as required by 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), until ordered to do so by the bankruptcy court more than two years after he should have disclosed his fee agreement and more than a year after he should have disclosed the payments. For these violations the bankruptcy court sanctioned Mr. Welch by requiring him to pay $25,000 to the bankruptcy estate.

The bankruptcy appellate panel (BAP) affirmed the sanction after the Stewarts' largest creditor, SE Property Holdings (SEPH), which had initiated the proceedings as an involuntary bankruptcy, challenged the sanction as so inadequate as to constitute an abuse of discretion. SEPH appeals that decision. Exercising jurisdiction under 28 U.S.C. § 158(d), we agree with SEPH and reverse and remand for further consideration. The presumptive sanction for a violation of § 329(a) is forfeiture of the entire fee. For good reason the bankruptcy court can impose a lesser sanction. But the court thus far has not provided good reason. It assumed facts that were not in evidence and, most importantly, apparently assumed good faith without examining the possible motives for nondisclosure.

## I. ATTORNEY DISCLOSURE REQUIREMENTS UNDER BANKRUPTCY LAW

Attorneys for debtors perform an essential role in bankruptcy proceedings. But when it comes to compensation, they play second fiddle to creditors. In a Chapter 7 proceeding, such as the one before us, the attorney can be paid out of the bankruptcy estate only if first employed by the trustee and approved by the bankruptcy court. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538–39 (2004). As a check on debtor attorneys, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure require them to promptly disclose their fee arrangements and all payments for their bankruptcy services. Section 329(a) of the Bankruptcy Code states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b), which implements § 329, states:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief [*see* 11 U.S.C. § 303(h) (requirements that must be satisfied before issuance of order for relief after filing of a petition for involuntary bankruptcy)], or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

These provisions "require[] every attorney representing a debtor in bankruptcy to file with the court [within 14 days of the order for relief] a statement of all compensation received during the preceding year, or to be received, in connection with the bankruptcy." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127 (7th Cir. 2003). The disclosure obligation is a continuing one. Rule 2016(b) requires attorneys to submit supplemental statements "within 14 days after any payment or agreement not previously disclosed."

The disclosure requirements enable bankruptcy judges to perform their core and traditional role of overseeing lawyers who represent bankrupt debtors. *See* 3 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 329.LH, at 329–34 (16th ed. 2020) ("Under prior law, as under the modern Bankruptcy Code, compensation of the attorney for the debtor was scrutinized more closely than the compensation of other officers and professional persons."). The oversight is justified by two significant concerns. Debtors can be exploited by overreaching lawyers who overcharge for their services. And creditors can be denied their proper share of the bankruptcy estate if debtors (particularly those who believe they will net nothing from the nonexempt assets of the estate) direct money to their attorneys in preference to other creditors. *See Bethea*, 352 F.3d at 1127 (when facing bankruptcy, "[d]ebtors may not care who gets what money remains (if the attorney gets more, other creditors get less), and, when clients do not haggle over price, some attorneys will be tempted to divert the funds to themselves by charging excessive fees"); *In re Redding*, 263 B.R. 874, 878 (B.A.P. 8th Cir.) (§ 329 "reflects Congress' concern that payments to attorneys in the bankruptcy context might be the result of

4

evasion of creditor protections and provide the opportunity for overreaching by attorneys"), *revised on rehearing on other grounds*, 265 B.R. 601 (B.A.P. 8th Cir. 2001); H.R. Rep. No. 95–595, at 329 (1977) (Congress adopted § 329 because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny"); S. Rep. No. 95–989, at 39 (1977) (same). The required disclosures are necessary for that oversight. *See Bethea*, 352 F.3d at 1127 (disclosures "enable[] the court to determine whether the lawyer has received a preferential transfer"); *Law Offs. of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) (court must be able to rely on attorney's disclosures).

## II.     THE RELATIONSHIP BETWEEN SEPH AND THE STEWARTS

SEPH has complained that Mr. Welch, through arrangements not timely disclosed to the bankruptcy court, has been paid large sums that should have gone to SEPH and other creditors. To understand this issue, we must review the relationship between SEPH and the Stewarts.

SEPH is the largest creditor in the Stewarts' bankruptcy, with a claim exceeding $20 million. It has loaned millions of dollars to businesses that were controlled and largely owned by the Stewarts, in particular Neverve, LLC, in which David Stewart owned at least a 50% interest. The Stewarts personally signed or guaranteed the loans.

As the maturity date of a $16 million note approached, SEPH agreed to extend it in return for additional security. The security was the assignment by the Stewarts and companies they controlled of an interest in claims against British Petroleum (BP) arising

5

out of the disastrous 2010 "Deepwater Horizon" oil spill in the Gulf of Mexico. According to SEPH, the assignment document gave SEPH a security interest in the BP claims of all entities that David Stewart owned directly or indirectly.

The new maturity date came but the note was not paid. SEPH therefore filed on September 30, 2014, a petition in the United States Bankruptcy Court for the Southern District of Alabama to place the Stewarts in involuntary Chapter 7 bankruptcy. On March 18, 2015, the court ordered entry of orders for relief, and it entered an order on April 24 for joint administration of the cases for the two Stewarts.

The case was moved on June 12, 2015, to the United States Bankruptcy Court for the Western District of Oklahoma. Mr. Welch, who had not entered an appearance in Alabama, entered his appearance as attorney for the Stewarts in the Oklahoma proceedings on June 17.

### III.   WELCH'S FEE ARRANGEMENT AND PAYMENTS

On the same day that Mr. Welch entered an appearance, he executed a representation agreement with the Stewarts. The engagement included general representation, debt counseling, and corporate-structure and bankruptcy representation to the Stewarts and certain named business affiliates. Also at that time, the named affiliates, including Neverve, guaranteed Mr. Welch's legal fees in connection with the bankruptcy representation.

The BP claims were settled in spring 2016. By that time Mr. Welch had obtained an interest in the settlement proceeds. Under a fee-sharing agreement executed on April 19, 2016, the total attorney fee was 40% of the proceeds; that amount was split

6

three ways with 52% of it going to the chief attorney, 32% to Mr. Welch, and 16% to the person who referred the matter to the chief attorney. Mr. Welch's fee would therefore be about 13% of the amount recovered on the claims. There had been a previous attorney-compensation agreement governing the BP claims. But according to Mr. Welch, it could not be found; and the record apparently does not show what the terms of that earlier agreement were, or even whether he was a party to it. To explain his receipt of a contingency fee, Mr. Welch told the bankruptcy court that he "advised and assisted the non-debtor claimants in providing substantiating documents to support [the chief attorney] in the settlement process and negotiated specific language to the settlement agreements." Aplt. App., Vol. 13 at 3305.

The settlement proceeds were disbursed in August 2016. All of Mr. Welch's $348,404.41 in fees in this case came out of proceeds that were wired to him. He received $144,591.85 under his contingency-fee contract, but he then credited all that toward what he was owed for his bankruptcy work. In his own words, this was "a matter of fairness and efficiency in [his] mind." *Id.* at 3198. The remaining $203,812.56 came out of the $275,572.27 in net-settlement proceeds for Neverve. Mr. Welch paid himself because of Neverve's guarantee of his fee.

Although 11 U.S.C. § 329 and Bankruptcy Rule 2016(b) require attorneys for debtors to disclose their fee arrangements and all payments for their bankruptcy services, Mr. Welch failed to do so until September 2017, more than two years after entering into the bankruptcy-fee arrangement and more than a year after being paid. His disclosure was not voluntary. The failure to disclose was pointed out by SEPH during proceedings

7

on August 30, 2017, to determine whether the bankruptcy court would approve an agreement between the Trustee and the Stewarts signed in April. The agreement stated that the Trustee would abandon (thereby relinquishing to the Stewarts) all nonexempt property, including the Stewarts' membership interests in various limited liability companies, and the Stewarts would pay $750,000.

Before negotiations on the settlement agreement the Stewarts had argued that the Trustee should abandon those membership interests because they were valueless. In particular, on November 3, 2015, the Stewarts had moved in bankruptcy court to have the Trustee abandon their membership interests in three companies: Raven Resources, LLC, Oklamiss Investments, LLC, and Shimmering Sands Development Company, LLC, claiming that the three entities were in so much debt that they provided no value to the Stewarts' bankruptcy estate. *See* 11 U.S.C. § 554(a) ("[T]he trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."). At a hearing on the matter on January 20, 2016, Mr. Welch acknowledged that at least one of the entities, Shimmering Sands, had a $600,000 claim against BP and that "an attorney's contingency fee firm [had] agreed to try it" (he makes no mention that he was to receive any of that contingency fee). Aplt. App., Vol. 6 at 1516. But he downplayed the value of the claim, saying that it was "years from ever even being heard" and that they still would need to put on evidence and witnesses and the result was uncertain. *Id.* On March 18, however, Mr. Welch informed the Trustee that he had just learned that there was movement on the BP claims. On April 13 the

8

bankruptcy court denied the motion to abandon, at least in part because of the possibility the estate could benefit from the BP claims.

This led to the settlement agreement between the Stewarts and the Trustee, and then the August 30, 2017 hearing on whether the court should approve it. It was when Mr. Welch stated at the hearing that he had paid himself out of the BP proceeds, that SEPH and the bankruptcy court began questioning Mr. Welch about his compensation arrangements. SEPH brought up that Mr. Welch had never filed his required disclosures, including anything regarding his compensation or representation agreement. Offering no explanation, Mr. Welch merely acknowledged his obligation to make disclosures. The bankruptcy court said that it did not understand why he had not turned over the Neverve BP claim proceeds to the Trustee, telling Mr. Welch that the Trustee "should be the one making these decisions, not you and not David Stewart." Aplt. App., Vol. 29 at 6568. It told Mr. Welch to immediately make his disclosures. He filed disclosures on September 14 and 20, 2017.

## IV. BANKRUPTCY COURT PROCEEDINGS ON FAILURES TO DISCLOSE

In October 2017 SEPH filed a motion seeking disgorgement of Mr. Welch's fees and the denial of future compensation for violation of his disclosure obligations under § 329(a) and Rule 2016(b). SEPH cited precedent within (and outside of) the Tenth Circuit that such strong medicine was appropriate for violations like Mr. Welch's. SEPH also argued that it was entitled to the money received by Mr. Welch because it had a security interest in the Neverve funds or, alternatively, they were property of the estate.

9

It accused Mr. Welch of "conceal[ing] the fact that he was in possession of assets that belonged to either the Estate or to SEPH and then [] convert[ing] those assets to pay himself legal fees." Aplt. App., Vol. 13 at 3105. SEPH also pointed out that Mr. Welch had never said that he failed to disclose "because of ignorance of the law or because of oversight." *Id.* at 3106.

To excuse his failure to disclose some of the payments, Mr. Welch argued that his contingency fees did not need to be disclosed because they were "earned for services not in connection with the bankruptcy case." *Id.* at 3194; *see* 11 U.S.C. § 329(a) (requiring reporting of compensation for services *in connection with* the bankruptcy case). He did not otherwise seek to justify his failures to disclose even after SEPH's accusations. Instead, he argued that he had not taken property of the estate to pay his fees. He also requested that the bankruptcy court consider the beneficial work he had done for the estate. In reply, SEPH again argued that Mr. Welch's payments were from estate property and that in any event his violations warranted full disgorgement and denial of his fees.

The bankruptcy court did not conduct a hearing on the motion for disgorgement. In its written order it found to be meritless Mr. Welch's argument that the contingency fee was not for services rendered "in connection with" the bankruptcy case because he applied the BP funds to his bankruptcy fees. It found Mr. Welch to be in clear violation of § 329(a) and Rule 2016(b). The bankruptcy court said it was "incredulous" that such an able and experienced bankruptcy practitioner as Mr. Welch would commit such misconduct. *In re Stewart*, 583 B.R. 775, 784 (Bankr. W.D. Okla. 2018). It lamented

10

that the concealment of Mr. Welch's fees, in light of the lack of candor and veracity of the debtors,[1] generated even more suspicion and mistrust in the already contentious bankruptcy proceedings. And it doubted that Mr. Welch would ever have made the requisite disclosures without being ordered to do so. The bankruptcy court recognized that Mr. Welch's violations allowed it to order disgorgement of all his fees. But it did not choose that path.

Relying in part on a case involving sanctions against attorneys under Federal Rule of Civil Procedure 11, the bankruptcy court applied "the overriding principle in applying sanctions that 'the appropriate sanction should be the least severe sanction adequate to deter and punish' the offender and deter future violations of the rules." *Id.* at 786 (quoting *White v. Gen. Motors, Inc.*, 908 F.2d 675, 684 (10th Cir. 1990)). Also, the court agreed with Mr. Welch that his services had benefited the bankruptcy estate. Notably, it deviated from the parties' briefing to consider mitigating factors never raised by the parties:

- "[T]o this Court's knowledge, Welch has not been previously sanctioned."
- "It appears that he has not had much experience representing debtors in Chapter 7 in which court approval is not required for either employment or payment of counsel."

---

[1] For example, the Trustee brought a fraudulent-transfer proceeding to recover property given by the Stewarts to their children and to a trust for which David Stewart was the primary beneficiary. The bankruptcy court found that the transfers took place after SEPH had commenced litigation against the Stewarts and were made without consideration, that the Stewarts' personal tax returns continued to claim losses with respect to the property, that financial statements provided to lenders continued to claim personal ownership, and that David Stewart retained control over the companies.

11

- "It may well be that Welch . . . overlooked the attorney fee disclosure requirements imposed upon counsel in all chapters of the Bankruptcy Code."
- "The Court also believes that ordering disgorgement of all fees as sought by SEPH (or even a substantial portion of such fees) would be financially catastrophic to someone as Welch engaged in a largely solo practice."

*Id.* at 786–87. In addition, the court expressed its view that it lacked authority to require Mr. Welch to pay funds to the debtors' estate, which never had an interest in them, so it would have to order repayment to the entities that paid him and the entities would then likely simply repay him. The bankruptcy court ordered Mr. Welch to pay $25,000 to the Trustee for the benefit of the estate. It said that this disgorgement and the court's public chastisement of Mr. Welch would adequately deter him from future misconduct.

Unsatisfied with only a 7% reduction in Mr. Welch's fee, SEPH moved to alter or amend the bankruptcy court's order. It argued that the bankruptcy court's sua sponte consideration of mitigating circumstances lacked an evidentiary basis in the record because the parties themselves had not anticipated that such mitigating circumstances would be applied. SEPH also asked the bankruptcy court to clarify whether it concluded that the BP funds were property of the estate.

The bankruptcy court declined to alter the $25,000 sanction. It justified its sua sponte consideration of mitigating factors in light of the bankruptcy judge's common sense and 30 years of experience in bankruptcy private practice. The only specific argument it addressed on that score was its agreement that Mr. Welch never raised the issue of his ability to pay. But the bankruptcy court maintained that "it was appropriate for the Court to not require specific evidence as to Welch's net worth, but to exercise its

12

significant discretion in determining the amount of sanctions . . . subject to the principle that the sanction should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *In re Stewart*, Bankr. No. 15-12215-JDL, 2018 WL 3388925, at *3 (Bankr. W.D. Okla. July 10, 2018). Although the bankruptcy court had appeared to say in its initial order that the BP proceeds were not property of the estate, it clarified that it had not decided the issue.

SEPH appealed to the BAP, which affirmed the $25,000 sanction and the denial of SEPH's motion to alter or amend as within the bankruptcy court's discretion. *See SE Prop. Holdings, LLC v. Stewart (In re Stewart)*, 600 B.R. 425, 436 (B.A.P. 10th Cir. 2019). It stated that the sanction fell under the bankruptcy court's inherent power and should be exercised with restraint. Although it acknowledged that the Tenth Circuit had not previously recognized the mitigating factors relied on by the bankruptcy court, the BAP saw no problem with the bankruptcy court's considering them in deciding on its sanction. It did not address SEPH's argument that the bankruptcy court's sua sponte assessment of mitigating factors was without evidentiary basis.

## V.     ANALYSIS

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 692 (10th Cir. 2014) (internal quotation marks omitted). "We review the imposition of an attorney-fee sanction, whether rooted in statute, rule, or a court's inherent authority, only for an abuse of discretion." *Farmer v. Banco Popular of N. Am.*,

13

791 F.3d 1246, 1256 (10th Cir. 2015); *see Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 846, 847–48 (B.A.P. 10th Cir. 1997) (reviewing sanctions for violations of § 329(a) and Rule 2016(b) for abuse of discretion). "A [bankruptcy] court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." *Farmer*, 791 F.3d at 1256.

## A.     Required Disclosures and Sanctions for Noncompliance

It is undisputed that Mr. Welch violated the disclosure requirements of § 329(a) of the Bankruptcy Code and Bankruptcy Rule 2016(b). The attorney's duty of disclosure is that of a fiduciary. *See Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 480 (6th Cir. 1996) ("Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the court. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts."); *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 470 (2d Cir. 1981).

Courts have found violations of the duty to be intolerable, and the sanctions imposed have been harsh, going far beyond the need to compensate for the damage done or even to deter the specific offender. For example, in *Futuronics* a law firm had failed to disclose a fee-sharing arrangement with another firm. *See id.* at 470. Such arrangements are prohibited by the bankruptcy statute "because of their natural tendency to cause an attorney to inflate his fees in order to offset the diminution in compensation

14

caused by the agreement." *Id.*; *see* Fed. R. Bankr. P. 2016(b) (disclosure shall include "whether the attorney has shared or agreed to share the compensation with any other entity"). The law firm argued that "none of the evils that otherwise might be attributable to fee-sharing or their other acts manifested themselves" in the case because the bankruptcy proceedings were a great success, *Futuronics*, 655 F.2d at 471, with general creditors possibly receiving 100% payment, *see id.* at 466. Apparently recognizing this, the bankruptcy judge allowed the firm $850,000 in fees (including a $200,000 bonus!) after imposing a penalty of $190,000. *See id.* at 468. But because of the potential harm from the firm's conduct, the circuit court affirmed the district court's ruling that the bankruptcy court had abused its discretion by allowing any fees. *See id.* at 471. Perhaps the harshness of sanctions has had the desired deterrent effect, because there are relatively few reported cases of violations among the many, many bankruptcy proceedings that are filed.

Other circuits have similarly supported the full disgorgement or denial of fees for § 329(a) violations. *See Lewis*, 113 F.3d at 1045–46 (affirming bankruptcy court's exercise of its inherent authority over debtor attorney's compensation by completely denying attorney fees for failure to disclose under § 329(a)); *Downs*, 103 F.3d at 478 (reversing district court's affirmance of bankruptcy court's order because it failed to impose complete disgorgement and denial of fees, explaining that "[i]n cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, . . . the courts have consistently denied all fees."); *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or

15

inadvertent failure to disclose fully relevant information may result in a denial of all requested fees. . . . The court's denial of all fees was within its discretion."). *See generally Redding*, 263 B.R. at 880 ("It is well settled that disgorgement of fees is an appropriate sanction for failure to comply with the disclosure requirements of section 329 and Rule 2016. Indeed, the Courts of Appeal which have addressed this and similar disclosure issues are emphatic in affirming the grant of sanctions.").

The view underlying the imposition of total disgorgement for failure to disclose has been well-expressed by Bankruptcy Judge Michael of this circuit:

> Ours is a system built upon the principle of full and candid disclosure. Debtors must truthfully and accurately list all of their assets and all of their liabilities. Counsel must honestly and completely disclose the full nature of their relationship with their clients. Creditors must honestly and correctly calculate and state their claims. It is these disclosures which allow the public to have confidence in the system, and hopefully to believe that bankruptcy laws exist to protect the "honest but unfortunate" debtor, that those creditors who receive funds receive only their just and proper share, and that those who represent debtors perform a service beyond satisfaction of their selfish avarice. Without those beliefs, public confidence in the bankruptcy process, and perhaps far more, is placed at risk.
>
> The fragility of the system is found in the fact that many of the required disclosures are difficult if not impossible to police, at least in a cost-effective manner.

*In re Lewis*, 309 B.R. 597, 602–03 (Bankr. N.D. Okla. 2004). As a result, sanctions must sting hard: "The bankruptcy system functions on the premise that the overwhelming

majority of those who utilize it are honest, that those who are dishonest are [not][2] likely to be caught, and that the penalties for dishonesty are severe." *Id.* at 603 n.16.

It should come as no surprise that this circuit, and, at least until now, the lower courts in this circuit, have also consistently affirmed the denial of all fees for § 329(a) violations. *See Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers)*, 4 F.3d 1556, 1565 (10th Cir. 1993) ("[A]n attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, . . . and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney."); *Fairshter v. Stinky Love, Inc. (In re Lacy)*, 306 F. App'x 413, 419–20 (10th Cir. 2008) (unpublished) (following *Turner*); *Quiat v. Berger (In re Vann)*, 986 F.2d 1431, at *2 (10th Cir. 1993) (unpublished) (affirming full disgorgement of fees

---

[2] The *not* is not in the original text. But we assume that is a scrivener's error. After all, the sentence appears in a footnote to the sentence in the text that says that "many of the required disclosures are difficult if not impossible to police, at least in a cost-effective manner." 309 B.R. at 603. And it would be somewhat inconsistent to say that we are so dependent on the honesty of lawyers in bankruptcy cases if we are usually able to detect the dishonesty. Besides, the usual thinking is that sanctions must be harsher when detection of misconduct is difficult. A severe sanction on those who misbehave may deter people even if the likelihood of being caught is small. *See* Jeremy Bentham, *The Theory of Legislation* 325 (C.K. Ogden ed. 1931) ("The more deficient in certainty a punishment is, the severer it should be."); *cf. Dixon v. District of Columbia*, 666 F.3d 1337, 1343 (D.C. Cir. 2011) ("An individual officer can catch only so many speeding motorists. . . . It is precisely the severity of such sanctions that can be expected to deter some motorists from speeding."); *Directv, Inc. v. Barczewski*, 604 F.3d 1004, 1010 (7th Cir. 2010) ("One economically sound way to determine a penalty is to divide the harm done by the probability of apprehension. See Gary S. Becker, *Crime and Punishment: An Economic Approach*, 76 J. Pol. Econ. 169 (1968), a theory of sanctions that played a role in his receipt of a Nobel Prize in 1992. . . . Thus if signal theft enables a person to avoid paying $200 in fees to DirecTV, and only 1 in 50 signal thieves is caught, the appropriate penalty would be $10,000.").

17

when attorney failed to comply with Rule 2016(b) and disclosure statements were wholly inadequate to determine reasonableness of fees); *Smitty's Truck Stop*, 210 B.R. at 847, 849 (affirming full disgorgement of $5000 retainer and denial of fees even though Chapter 11 attorney argued inadvertence and that the information was disclosed in part in debtor's statement of affairs because "a clear violation of § 329 and Rule 2016(b)[,] . . .[e]ven if this failure was negligent or inadvertent, . . . is sufficient, in itself, to deny all fees"); *In re Brown*, 371 B.R. 486, 492 n.17, 501–04 (Bankr. N.D. Okla. 2007) (ordering disgorgement of all $10,697.08 in payments because of failure to seek approval under § 330 and to disclose under § 329, but allowing $460 used toward court costs), *amended on other grounds by* 370 B.R. 505 (Bankr. N.D. Okla. 2007); *In re Bartmann*, 320 B.R. 725, 750 (Bankr. N.D. Okla. 2004) (ordering disgorgement of undisclosed compensation in the amount of $28,000 for violations of §§ 327 and 329, and Bankruptcy Rules 2014 and 2016; although the Trustee argued that the attorney should disgorge all undisclosed fees and the attorney had been paid $38,000 prepetition, the Trustee sought disgorgement of only $28,000, perhaps because it was debatable whether some of the fees were paid in connection with the bankruptcy); *Lewis*, 309 B.R. at 606, 611 (ordering disgorgement of all $892 in one case and denial of all fees sought in another because of failure to disclose); *In re Woodward*, 229 B.R. 468, 475 (Bankr. N.D. Okla. 1999) (ordering disgorgement of $2500 fee because the "law is clear that the failure to properly disclose compensation received is in and of itself grounds for disgorgement").

In short, the disgorgement sanction imposed on attorneys for violating their duties of disclosure to the bankruptcy court is of the nature of a sanction for breach of fiduciary

18

duty. The case law under Federal Rule of Civil Procedure 11 invoked by the bankruptcy court and the BAP in this proceeding is inapposite. Unlike a failure to make disclosures required by § 329(a) and Bankruptcy Rule 2016(b), a violation of Rule 11—generally based on the lack of factual or legal support for a party's claims or defenses—is highly likely to see the light of day. When the great majority of violations are likely to be discovered, the need for harsh sanctions is greatly diminished. The lesson of the case law discussed above is that imposition of the least possible sanction as the standard for violations of § 329(a) and Bankruptcy Rule 2016(b) would not be effective in assuring compliance. Or, to put the matter another way, the least possible sanction to assure compliance by others is generally disgorgement of the entire fee.

A better analogy than Rule 11 is presented by *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151, 1158–60 (10th Cir. 2007), where we held that a debtor who failed to disclose to the bankruptcy court a cause of action that could be an asset of the estate was judicially estopped from bringing the claim after closure of the bankruptcy proceeding. Before filing for bankruptcy, the debtor had brought a personal-injury suit against nine defendants in federal court. *See id.* at 1153, 1159. He intentionally failed to disclose this litigation in his filings and testimony in bankruptcy court. *See id.* at 1153–55, 1158–59. About a year after the debtor obtained a discharge in his Chapter 7 bankruptcy, his personal-injury lawyer discovered that there had been bankruptcy proceedings and promptly informed the bankruptcy trustee. The trustee successfully moved to reopen the bankruptcy and was substituted as the real party in interest in the personal-injury action. *See id.* at 1154. The trustee settled with two of the personal-injury defendants, obtaining

19

enough funds to pay all allowable creditor claims. *See id*. at 1155. The district court ruled that the debtor could not pursue the personal-injury claims, holding that he was judicially estopped because he had obtained his discharge in bankruptcy on the representation that he had no such asset. *See id.* at 1154–55 & n.3. We affirmed. In light of the seductive "motive to conceal legal claims and reap the financial rewards," "[t]he doctrine of judicial estoppel serves to offset such motive, inducing debtors to be completely truthful in their bankruptcy disclosures." *Id.* at 1159. We explained that it would not be enough to simply return the debtor to the position he would be in if he had made the proper disclosures:

> That [the debtor's] bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential. A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, even if the discharge is later vacated. Allowing [the debtor] to "back up" and benefit from the reopening of his bankruptcy only after his omission had been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

*Id.* at 1160 (original brackets, citations, and further internal quotation marks omitted). In our view, a similar approach is warranted when the debtor's attorney does not make the required disclosures regarding the terms of the representation and compensation received.

This is not to say that full disgorgement is always appropriate for failure to disclose under § 329. But it should be the default sanction, and there must be sound reasons for anything less. For example, in a case where the attorney violated a different fiduciary duty (the attorney had a conflict of interest when he acquired a creditor's interest in the bankruptcy estate while providing legal services to the trustee) we said:

20

"In exercising the discretion granted by the statute we think *the court should lean strongly toward denial of fees, and* if the past benefit to the wrongdoer fiduciary can be quantified, to require *disgorgement of compensation previously paid* that fiduciary even before the conflict arose. *This approach is most in keeping with common law fiduciary principles and best serves the deterrence purpose of the rule*." *Gray v. English*, 30 F.3d 1319, 1324 (10th Cir. 1994) (emphasis added). Nevertheless, we held that the bankruptcy court had not abused its discretion in declining to require disgorgement of fees earned before the conflict of interest arose or of fees for work by other attorneys in the conflicted attorney's law firm, who knew nothing of his conflict. We noted that the bankruptcy court had "credited [the attorney] with having performed extraordinary services to the estate both before and after he acquired the creditor's interest," that there was no embezzlement or self-dealing, and that "the principal harm done by [the conflicted attorney] was to the creditor whose claim he acquired" and that creditor had apparently obtained satisfaction from the attorney for that harm. *Id.* We concluded, "It is a close case, and we might well have upheld more severe punishment of [the conflicted attorney] and his law firm, to whom his conflict was attributable under ordinary agency principles," but we deferred to the bankruptcy judge. *Id.* at 1324–25.

It would be unwise to try to catalog all potential mitigating circumstances. But they must be compelling ones. For example, in *In re Wright*, 591 B.R. 68 (Bankr. N.D. Okla. 2018), an opinion consolidating 13 bankruptcy proceedings, the court said that full disgorgement of all fees was appropriate, but it limited disgorgement to postpetition payments. *See id.* at 95. According to the court, ordering disgorgement of the prepetition

21

fees, often less than $200, "would be administratively unworkable, since some of the funds paid by the debtors pre-petition were allocated to court fees and other miscellaneous services." *Id.*

Or the breach may have been only a technical one. *See Vergos v. Mendes & Gonzalez PLLC (In re McCrary & Dunlap Const. Co.), LLC*, 79 F. App'x 770, 780 (6th Cir. 2003) (unpublished) ("[W]hile a bankruptcy court does not abuse its discretion if it denies all compensation where, through mere negligence, an attorney fails to satisfy the requirements of the Code and Rules, . . . a 'technical breach' of the Code and Rules generally warrants a sanction far more lenient than full disgorgement and denial of all compensation."). *But see id.* at 786 (Batchelder, J., dissenting) (full disgorgement was appropriate because law firm held itself out as experienced and should be held to that standard).

Additional situations when leniency may be warranted can be addressed when they arise.

### B. Application to This Case

Mr. Welch egregiously violated the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b). As the bankruptcy judge noted, he probably never would have made the disclosures had the court not ordered him to. The disclosures came more than two years after he was required to disclose his compensation agreement with the Stewarts and more than a year after he was required to report the $350,000 paid him.

As explained above, the default sanction for Mr. Welch's failures to disclose is that he must disgorge all fees received in connection with the bankruptcy. The

bankruptcy court could order a lesser disgorgement, but only for sound reasons supported by solid evidence. Otherwise, the failure to disgorge all fees is an abuse of discretion. On the record before us, we must hold that there was an abuse of discretion in this case.

The bankruptcy court's reasons for disgorging only a small fraction of Mr. Welch's fee were wholly inadequate. Without any evidence, or even a supporting argument from Mr. Welch, it speculated that Mr. Welch had never been sanctioned, had not represented debtors in Chapter 7 proceedings and was not familiar with the disclosure requirements, and would face financial catastrophe if he had to disgorge the full fee. The court relied on its common sense and long experience with bankruptcy practice. We fail, however, to see how those sources could provide a basis for those grounds favoring only partial disgorgement. We believe the bankruptcy judge's experience and participation in the proceedings could support its determination that Mr. Welch had provided exceptional representation to his clients. But a conclusory statement does not suffice. Particularly given the court's observation about the lack of candor and honesty of his clients, we should note that it would not be enough to fight tooth and nail in defense of indefensible improprieties of a client. On the other hand, credit should be given to an attorney who manages to convince the client of the need for full disclosure and candor in the proceedings.

Most importantly, however, the bankruptcy court failed to examine the source of the payments to Mr. Welch. The court seems to have inferred from Mr. Welch's talent and experience that his failures to disclose must have been inadvertent. But an alternative hypothesis is that he surely knew of his duty and must have had some very

23

strong reason to keep the payments secret. If, for example, he had thought that disclosure would lead to substantial challenges to the payments (as indeed occurred), he would have had a motive not to disclose. The lure of an uncontested $350,000 might induce some people to violate the disclosure requirements, particularly if the downside risk was limited to a $25,000 penalty and criticism in a bankruptcy-court opinion.

We would therefore expect the court to examine those payments before deciding not to require complete disgorgement. Consider the contingency-fee payment of $144,591.85. The only document entitling him to that fee is dated shortly before the BP settlement and about a month after he had informed the Trustee that there was movement in the BP litigation. That is pretty late in the litigation to be adding a recipient of a contingency fee, yet there is no evidence that he had been promised any contingency fee before the document was executed. Also, there is a question about the value of the work he purportedly performed to earn that fee —"advis[ing] and assist[ing] the non-debtor claimants in providing substantiating documents to support [the chief attorney] in the settlement process and negotiat[ing] specific language to the settlement agreements." Aplt. App., Vol. 13 at 3305. Mr. Welch would not be entitled to the fee if it were merely a device to divert to him money that would otherwise be available for creditors of the Stewarts' companies.

The other payment was $203,812.56 out of Neverve's net share of the BP proceeds. SEPH makes two plausible arguments why that payment was improper. First, it contends that it had a security interest in BP payments to any of the Stewarts' companies. Second, as we understand the point, it argues that any disbursement by

24

Neverve for the Stewarts' benefit was a dividend to them and therefore property of the estate.

We make no judgment on the validity of the challenges to these payments to Mr. Welch. The challenges may lack merit. But Mr. Welch's burden on the disgorgement issue requires more than simply prevailing on the challenges. Even if they fail, they may have caused sufficient concern to induce him to avoid the challenges by keeping the payments secret. As we said before about a debtor's failure to disclose a cause of action as an asset of the estate, allowing the debtor "to back up and benefit from the reopening of his bankruptcy only after his admission had been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them." *Eastman*, 493 F.3d at 1160 (brackets and internal quotation marks omitted). If the sole penalty for not disclosing is that the debtor's attorney has to face the challenges that would have presented themselves had he disclosed the matter as required, then there is no incentive to comply with disclosure requirements.

For the above reasons, we must reverse the bankruptcy court's disgorgement order and remand for further proceedings.[3]

---

[3] We realize that if further disgorgement seems proper, a question may arise regarding where the disgorged funds should go. We leave that possibility for the bankruptcy court to resolve in the first instance, because what is determined on remand may moot the issue. There may be no further disgorgement; or it may be determined that all the funds paid to Mr. Welch were property of the estate or subject to liens of creditors.

## VI. CONCLUSION

We **REVERSE** the bankruptcy court's order requiring Mr. Welch to pay to the Trustee $25,000 for the benefit of the estate and **REMAND** for further proceedings consistent with this opinion.